**B. Reagan McLEMORE, III, Appellant,**

v.

**PACIFIC SOUTHWEST BANK, FSB, Appellee.**

No. 06–93–00034–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 27, 1994.

Decided Feb. 14, 1994.

Rehearing Overruled March 29, 1994.

Gregory P. Grajczyk, Harbour, Kenley, Boyland, Smith, Longview, for appellant.

Robert J. Fuller, Hopkins & Sutter, Dallas, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

B. Reagan McLemore, III appeals from a summary judgment granted to Pacific Southwest Bank, FSB, in a suit brought by the Bank to recover the deficiency on a foreclosed installment note. McLemore contends that the trial court erred in granting the Bank's motion for summary judgment because the motion and supporting evidence were insufficient to establish all necessary elements of the Bank's cause of action as a matter of law, because there was a material fact issue as to whether the note was accelerated, and when, because the Bank's suit for deficiency on the note was barred by the statute of limitations, and because the sum-

mary judgment was in violation of McLemore's due process rights.

On July 17, 1978, McLemore and three other principals executed a real estate lien note payable to Charter Savings & Loan Association's predecessor in interest, First Federal Savings & Loan Association of Marshall, Texas, in the amount of $300,000. As security for the note, the makers executed a deed of trust covering certain real property in Gregg County. McLemore and the other principals eventually defaulted on the note, and Charter thereafter gave notice of the default and of its intention to accelerate payment under the terms of the deed of trust. The principals of the note other than McLemore have been discharged in bankruptcy.

Charter foreclosed the deed of trust and sold the property on July 5, 1988, to the highest bidder for $73,500. These proceeds were applied to the amount due Charter by McLemore. Charter sued McLemore for the deficiency on the promissory note on November 18, 1988. This suit was later dismissed for want of prosecution.

When Charter was declared insolvent by the Federal Home Loan Bank Board in December 1988, the Federal Savings & Loan Insurance Corporation (FSLIC) was appointed as receiver. The FSLIC thus succeeded to Charter's interest in the note and deed of trust. The FSLIC transferred virtually all of Charter's assets to the appellee, Pacific Southwest Bank, which continues as the current owner and holder of the note.

The Bank sued McLemore for the amount of the deficiency plus interest and attorney's fees. McLemore entered a general denial and asserted the affirmative defenses of statute of limitations and accord and satisfaction. The Bank filed a motion for summary judgment, to which there was attached proof in the form of an affidavit from Jay M. Dalbey, asset manager for the Bank.

In his affidavit, Dalbey swore that he managed certain assets for the Bank, including the promissory note in question in the original principal amount of $300,000; that the note was secured as shown by a properly recorded deed of trust; that the terms of the deed of trust provided that McLemore con-

veyed the real property in question to a trustee for the ultimate benefit of Charter to secure payment of the note; that the Bank is the owner and holder of the note and is entitled to enforce payment, pursuant to assignment and transfer of rights to the Bank by the receiver for Charter, the FSLIC; that the note was not paid when due; that Charter so notified McLemore and demanded payment, advising him that if the default was not cured by June 3, 1988, Charter would foreclose its deed of trust lien and sell the property; and that on July 5, 1988, the real property was sold at auction to the highest bidder for $73,500.

The affidavit also included the following language:

> As of October 23, 1992, the amount owing under the Note is $379,210.13, consisting of a principal balance and interest accrued as of foreclosure of $287,173.86, minus the bid price of $73,500.00, plus interest accrued on the deficiency of $105.37 per diem from July 5, 1988 until October 23, 1992 of $165,536.27, for a deficiency as of October 23, 1992 of $379,210.13. In addition, interest continues to accrue since October 23, 1992 at the rate of $105.37 per diem.

In McLemore's response to the Bank's motion for summary judgment, he contended in relevant part that there were factual issues as to whether proper notice was given of the foreclosure and whether limitations had run (thereby barring the Bank's suit for the deficiency on the note).

## THE FINAL SUMMARY JUDGMENT

On December 7, 1992, McLemore filed a motion for summary judgment on the basis of the affirmative defenses of limitations, collateral estoppel, and res judicata. We have been unable to locate in the transcript any action by the court on this motion, but footnote six on page ten of the Bank's brief indicates that the court denied McLemore's motion.

On the Bank's motion, the trial court granted a "Final Summary Judgment" on December 10, 1992, finding that the sum of $379,210.13 was due on the note as of October 23, 1992, plus interest of $105.37 per diem from October 23, 1992, until judgment.

The court also awarded attorney's fees in the amount of $37,921.00 and postjudgment interest at the rate of eighteen percent.

McLemore filed a motion for new trial, pointing out that, although the note in question provides that matured unpaid principal and interest shall bear interest at the rate of ten percent per annum from date of maturity until paid, the calculations set forth in Dalbey's affidavit show the interest rate used by the Bank to determine the deficiency on the note was eighteen percent. He contended that this discrepancy created a fact question barring a summary judgment.

McLemore's motion for new trial also raised a question regarding whether the statute of limitations had run, i.e., whether or not the Bank had ever established that it had accelerated the payments on the note and, if so, when. He pointed out that Charter's default notice of October 21, 1987, advised him that "if you fail to pay the amount due on or before November 6, 1987, Charter Savings and Loan Association will accelerate the entire balance on your loan due and payable without further demand...." McLemore argued that the quoted language raised a fact issue whether the loan was accelerated on November 6, 1987.

### THE AMENDED FINAL SUMMARY JUDGMENT

In its answer to McLemore's motion for new trial, the Bank conceded that it had erroneously used an eighteen percent rate to calculate interest on the amount due and owing on the note. On February 4, 1993, the court, timely exercising its plenary power over its judgment, granted the Bank's motion to reform the judgment by using a ten percent rate to recalculate the amount due and owing and issued an "Amended Final Summary Judgment." The amended final summary judgment provided, among other things, for a ten percent interest rate on the amount due and owing and stated a daily interest amount of $105.37.

### CORRECTED AMENDED FINAL SUMMARY JUDGMENT

On February 10, 1993, following the rendition of the amended final summary judg-

ment, McLemore filed an amended motion for new trial in which he contended that the Bank had *again* miscalculated the proper per diem interest under the note by setting forth a per diem interest of $105.37. Once again, the Bank did not dispute the miscalculation. On February 17, 1993, the trial court entered a "Corrected Amended Final Summary Judgment" against McLemore and in favor of the Bank. This judgment included among its terms the following:

a. The sum of $308,801.36 due under the Note as of October 23, 1992, plus interest of $58.54 per diem from October 23, 1992 until judgment;

b. Attorneys' fees in the amount of $30,880.13;

c. Postjudgment interest at the rate of 10%; and

d. All costs of court.

This was the third and final summary judgment entered by the court in this cause.

On March 16, 1993, McLemore filed a "Second Amended Motion for New Trial" which was denied by the trial court.

### STANDARD OF REVIEW

■ In this case, both parties moved for summary judgment. The court granted the motion filed by the Bank and overruled the motion filed by McLemore. In general, an order granting a summary judgment may be appealed, but an order denying a summary judgment may not. *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex.1980). However, an exception to this rule exists when both parties file motions for summary judgment and the court grants one and overrules the other. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1958). On appeal, the proper disposition is for the appellate court to render judgment for the party whose motion should have been granted. *Members Mutual Ins. Co. v. Hermann Hospital*, 664 S.W.2d 325, 328 (Tex. 1984). In reviewing the summary judgment record before us, it is our duty to apply the following rules:

1. The movant for summary judgment has the burden of showing that there is no

genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor.

*Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975). The trial court may not consider evidence favorable to the movant's position unless it is uncontroverted. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965).

### INCORRECT INTEREST RATE IN JUDGMENT

■ In subpoint of error one, McLemore argues that the trial court erred in granting summary judgment for the Bank because the Bank's motion for summary judgment and supporting evidence was insufficient to establish all necessary elements of the Bank's cause of action as a matter of law.

■ The Bank had the burden to establish as a matter of law:

(1) the existence of the note in question

(2) that the bank was the legal owner and holder of the note;

(3) that McLemore signed the note; and

(4) that a certain balance was due and owing on the note.

*Clark v. Dedina*, 658 S.W.2d 293, 295 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd).

Asset Manager Dalbey's affidavit established the existence of the note in question; that the Bank is the current holder and legal owner of the note; and that McLemore signed the note and subsequently defaulted. McLemore does not contest nor did he controvert those elements by affidavit summary judgment proof. The affidavit also set forth a balance due and owing on the note. As above noted, it is that element which McLemore challenges as being erroneous because the Bank admittedly used an improper rate of interest to compute the balance due and owing.

The Bank points out that McLemore did not allege or argue *prior to judgment* that the principal balance and accrued interest were not as reflected in Dalbey's affidavit and that for that reason McLemore waived any right to dispute those amounts, citing *Sharpe v. Lomas & Nettleton Financial Corp.*, 601 S.W.2d 55, 57 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). In that case, the defendant complained only that because the evidence did not demonstrate the method used to make the computation, the court could not determine its accuracy. The court held that the defendant failed to controvert the plaintiff's summary judgment proof of the interest due; that it was the defendant's burden to point out any inaccuracy in computation; and that the defendant should have responded *by affidavit* setting forth the proper method of computation and the inaccuracy, if any, in the affiant's results. *Id.* at 58. That court further held that, having failed to respond properly, the defendant cannot on appeal complain of matters not brought to the trial court's attention. *Id.*

In reply to McLemore's motion for new trial filed after the summary judgment was entered, the Bank filed a motion in which it conceded that the amount shown in Dalbey's affidavit as due and owing on the note was erroneous. The Bank urged the court to reform the judgment to reflect the actual amount due, based on a ten percent interest rate. The court granted the motion and issued an "Amended Final Summary Judgment."

The Bank argues that McLemore's contention that the erroneous use of an improper interest rate to calculate the amount due and owing was simply a matter of incorrect arithmetic which the court had authority to correct. This appears analogous to the case of *Clark*, 658 S.W.2d 293, a summary judgment case in which the trial court erred in assessing postjudgment interest at eighteen rather than the statutory ten percent. The appellate court modified the summary judgment so as to reflect the correct rate of interest. In the instant case, the trial court did likewise. We hold that a correction in the computation of the amount due was within the discretion of the trial court, and McLemore

cannot complain of a correction made in his favor and pursuant to his contentions in his motion for new trial. A correction of an arithmetical computation can be made by the court without burdening the legal system by requiring a new trial. This point of error is overruled.

## ACCELERATION OF THE NOTE

■ Next, in subpoint two, McLemore contends that there was a material fact issue as to whether the note was accelerated, and when. He argues that, under the terms of the note, without acceleration the principal amount of the note would not be due and the note would therefore not be ripe for judgment and the foreclosure would be wrongful.

The Bank counters that McLemore never brought a claim against either Charter or the Bank for wrongful foreclosure and did not argue to the trial court *prior to the summary judgment* that the note had not been accelerated. Accordingly, such a claim was waived for appeal. *See Sharpe,* 601 S.W.2d at 57.

Even if there were no waiver, Dalbey's affidavit included a copy of a letter that Charter sent to McLemore on May 3, 1988. The letter notified McLemore that if he failed to pay the total amount due on or before June 3, 1988, Charter would accelerate the maturity on the loan, declare the entire amount of the loan due and payable without further demand, and proceed to foreclose and sell the property under the terms of the deed of trust at public auction on July 5, 1988. The letter of May 3, 1988, notified McLemore in clear and unequivocal terms of a demand for payment and that nonpayment would result in acceleration on a specific date. This was sufficient notice to McLemore as to Charter's *intent* to accelerate. *See Ogden v. Gibraltar Savings Ass'n,* 640 S.W.2d 232 (Tex.1982).

Charter sent two prior notices of "intent to accelerate" to McLemore, the first on October 21, 1987, indicating that it would accelerate the note on or before November 6, 1987, if payment in full was not made, and sell the property at public auction on December 1, 1987; the second notice on May 2, 1988, indicated that it would accelerate the note on or before June 2, 1988, and sell the property

at public auction on August 2, 1988. The Bank did not follow either of these letters with action to foreclose its deed of trust and sell the property. The following day, on May 3, 1988, the Bank sent its final notice of intent to accelerate, this time as of June 3, 1988, for foreclosure and sale on July 5, 1988. The Bank did in fact sell the property on that date, having earlier sent notice to McLemore of the impending sale and, later, notice of the actual sale of July 5. We conclude that these last acts constituted "notice of acceleration" as required by statute in this situation following a notice of intent to accelerate. *See Shepler v. Kubena,* 563 S.W.2d 382 (Tex.Civ. App.—Austin 1978, no writ) (actual foreclosure will constitute acceleration on an installment debt).

Even if the notices had been deficient, the note executed by McLemore contains an express waiver of all notices, demand for payment, and notice of *intent* to accelerate the maturity. This was effective to waive demand for payment and notice of *intent* to accelerate. *See Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 894 (Tex.1991). It would not, however, be effective to waive notice of acceleration, a separate right from notice of *intent* to accelerate. *Id.* McLemore waived his right to notice of intent to accelerate, but there is nothing in the record to suggest that he waived his right to notice of acceleration. Both notices, or waivers thereof, are required. *Ogden,* 640 S.W.2d at 233.

■ McLemore contends that he did not have the required notice of acceleration. We disagree. Exhibit E to Dalbey's affidavit is a certification that notice of the impending foreclosure sale of July 5, 1988, was mailed to McLemore on June 13, 1988. Exhibit H to Dalbey's affidavit is a copy of the substitute trustee's deed indicating that the property in question was sold at a foreclosure sale auction on July 5, 1988. McLemore does not claim that he did not receive a copy of Exhibit E or Exhibit H. Arguably, these two documents constituted notice of acceleration and sale on a date certain, i.e., July 5, 1988. However, the Texas Supreme Court indicated in *Ogden* that it would not decide in that

case whether, after proper notice of intent to accelerate, a notice of trustee's sale is sufficient to give notice that the debt has been accelerated. *Ogden*, 640 S.W.2d at 234.

McLemore argues that this Court should not conclude that the notice of intent, coupled with notice of a trustee's sale, is sufficient to establish that the required notice of acceleration was in fact given to him. He reminds us that this Court is required to indulge all inferences in the nonmovant's favor, and he urges that the Court should infer that notice of acceleration did not occur. Although the Supreme Court specifically declined to decide the question, we conclude that we may reasonably infer that a notice of intent to accelerate followed by a notice of a trustee's sale constitutes a notice of acceleration.

This point of error is overruled.

## DUE PROCESS

■ McLemore contends that the summary judgment violated his due process rights under the United States and Texas Constitutions and the Texas Rules of Civil Procedure by failing to give him adequate notice and opportunity to respond to other than the initial summary judgment entered by the trial court. Beyond this passing reference to the federal and state constitutions, however, he restricts his argument to Rule 166a of the Texas Rules of Civil Procedure. He argues that under Rule 166a, he had a right to twenty-one days' notice of any hearing on a motion for summary judgment, but that in this case that right was observed only as to the initial summary judgment. He contends that the Bank twice convinced the trial court to "reform" or "modify" its initial summary judgment summarily. Rule 166a requires, in relevant part, that the motion for summary judgment and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. McLemore admits that, as to the original summary judgment, he received the required notice.

The Bank argues that its motions for reformation of the judgment requested only that the court reform the judgment to reflect use of the proper interest rate; that this could not be construed as new motions for summary judgments; and that no hearing was necessary to correct an arithmetical calculation. The Bank further urges that, because its motions to reform and to correct the original summary judgment did not include new evidence, no hearing was necessary to correct what in each case was an admitted mistake in calculation of the amount due and owing. We agree. The corrections to the mathematical computations in the second and third summary judgments benefited McLemore in each case and in fact were attempts by the trial court to respond to his complaint about use of an improper rate of interest to compute the amount due and owing on the note. They were not changes requiring a new motion for summary judgment, but were based upon the initial motion for summary judgment.

This point of error is overruled.

## THE LIMITATIONS ISSUE: STATE OR FEDERAL RULE?

■ In his final point of error, McLemore argues that the trial court erred in overruling *his* motion for summary judgment because, as a matter of law, the Bank's suit for deficiency on the note was barred by the applicable statute of limitations. He contends that acceleration arguably occurred on November 6, 1987, the date set out in the first of three notices of intent to accelerate and that the Bank's suit on the note was not filed until May 5, 1992, more than four years later. He concludes that any action for deficiency is therefore barred by TEX.CIV.PRAC. & REM.CODE ANN. § 16.035 (Vernon 1986). Section 16.035(e) provides that, if a note payable in installments is secured by a lien on real property, as in the present case, the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment. When McLemore failed to bring payments up to date pursuant to the notice of default and intent to accelerate letter of May 3, 1988, the remaining balance became due and owing, and the Bank accelerated the note by foreclosing the deed of trust and selling the property at auction on July 5, 1988. We conclude that the note matured upon acceleration on July 5, 1988, and all remaining installments were due as of

that date. The four-year Texas limitations period under Section 16.035(e) began to run on that maturity date.

As previously noted, the record shows that three separate notices of intent to accelerate the note were sent to McLemore, but the Bank actually gave notice of the foreclosure sale and actually foreclosed the lien and sold the property after the third notice on July 5, 1988. The underlying suit was filed on May 5, 1992, a date within the Texas four-year statute of limitations. McLemore argues that this Court should infer that the first letter of intent to accelerate should start the running of the statute of limitations. Charter did not actually accelerate on that notice, however, and the inference would not be reasonable.

 The Bank is a private assignee of the FSLIC, which was the receiver for the assets of Charter. A federal statute provides for a six-year statute of limitations for claims brought by the United States or an officer or agency thereof, such as the FSLIC. 28 U.S.C.A. § 2415(a) (West Supp.1993). A parallel statute provides for a six-year limitations period for the FDIC. 12 U.S.C.A. § 1821(d)(14) (West 1989). The cause of action accrues under Section 2415(a) when the payor of the note defaults, and not from the date the FSLIC was appointed receiver. *See F.D.I.C. v. Bledsoe,* 989 F.2d 805, 807 (5th Cir.1993), *citing F.D.I.C. v. Belli,* 981 F.2d 838, 840–42 (5th Cir.1993). In *Bledsoe,* the court held that the six-year federal period of limitations transfers to a private assignee of the FSLIC.

The weight of opinions rendered by Texas courts of appeals on this issue support the application of the federal limitations period to assignees of the FDIC and/or FSLIC. In *Thweatt v. Jackson,* 838 S.W.2d 725 (Tex. App.—Austin 1992, writ granted), the court held that an assignee of the FDIC, a federal agency, receives the benefit of the FDIC's six-year limitations period. In *Pineda v. P.M.I. Mortgage Insurance Co.,* 843 S.W.2d 660 (Tex.App.—Corpus Christi 1992), *writ denied per curiam,* 851 S.W.2d 191 (Tex. 1993), the court agreed with the rationale of the Fifth Circuit court in *Bledsoe,* finding that the federal six-year limitations period

transferred to a private assignee of a federal agency. The Texas Supreme Court denied the application for writ of error in that case, but in a per curiam opinion a majority of the court indicated that it neither approved nor disapproved of the court of appeals' discussion of whether the federal 6–year statute of limitations under 12 U.S.C.A. § 1821(d)(14), which pertains specifically to the FDIC, applies to assignees of a federal agency. *See Pineda,* 851 S.W.2d at 191; *see also Cadle Company v. Matheson,* 870 S.W.2d 548 (Tex. App.—Houston [1st Dist.] 1993, n.w.h.) (specifically following the rationale of *Thweatt* ).

The Dallas Court of Appeals disagreed with the *Thweatt* court, holding that 28 U.S.C.A. § 1821(d)(14) does not apply to private assignees of the FDIC. *Federal Debt Management v. Weatherly,* 842 S.W.2d 774 (Tex.App.—Dallas 1992, writ granted). In that case, the Dallas court declined to follow the reasoning of the courts in *Bledsoe, Thweatt,* and *Pineda.* The Texas Supreme Court has not yet acted on the writs granted in *Weatherly* and *Pineda.* We are persuaded at this time by the reasoning of the Fifth Circuit in *Bledsoe* and the opinions by Texas courts of appeals in *Thweatt, Pineda,* and *Matheson.* We hold that the federal six-year statute derived from 28 U.S.C.A. § 2415(a) transferred from the FSLIC to the Bank and that limitations began to run on July 5, 1988, the date of default on all remaining payments by McLemore. The suit in the instant case was filed well within the federal six-year statute of limitations applicable to the Bank. Moreover, the suit was filed within the Texas four-year period of limitations, given that that period also began to run on July 5, 1988. The trial court did not err in overruling McLemore's motion for summary judgment.

This point of error is overruled.

In his brief and at oral argument, McLemore argued, correctly, that the court, in its corrected amended final summary judgment, calculated accrued interest through *December 16, 1992,* the date of the initial final summary judgment. This is represented within the total figure of $308,801.36, combining principal and interest, in the corrected amended final summary judgment, but the judgment indicates that that amount was due

under the note as of *October 23, 1992* (the date of preparation of Dalbey's affidavit).

The corrected amended final summary judgment also provides that from *October 23, 1992,* an additional amount of $58.54 (ten percent interest rate pursuant to the terms of the note) will be added to accrued interest each day until the date of judgment. McLemore pointed out in his brief and at oral argument that this charged interest twice for the six-week period between the October 23, 1992, and December 16, 1992.

The Bank conceded error at trial in its motion for reformation and again during oral argument and requested that we modify the judgment so as to correct the errors. Accordingly, we hereby modify the corrected amended final summary judgment so as to provide that the amount of $308,801.36 was due under the note as of December 16, 1992 (not October 23, 1992) and so as to provide that the additional per diem interest of $58.54 begins to run from December 16, 1992 (not October 23, 1992), until February 17, 1992 (the date of the corrected amended final summary judgment). In so doing, we enhance judicial economy by avoiding a remand and new trial for what, in essence, is a mathematical correction to calculations within the judgment. *See Clark,* 658 S.W.2d at 295 (interest rate of eighteen percent erroneously used in computing postjudgment interest; judgment modified by the appellate court so as to correct the interest rate to ten percent, the maximum allowed by statute).

The Bank invites us to consider sanctions against McLemore for filing a frivolous appeal. We decline to do so, in that the points raised by McLemore on appeal were arguable and do not appear to have been taken for delay and without sufficient cause.

The judgment as modified is affirmed.