MEADOWBROOK GARDENS,
LTD., Appellant,

v.

WMFMT REAL ESTATE LIMITED
PARTNERSHIP, Appellee.

No. 2-97-134-CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 5, 1998.

Rehearing Overruled Dec. 17, 1998.

Alvin Homer Badger, Dallas, for appellant.

Locke, Purnell, Boren, Laney & Neely, Larry M. Lesh, Dallas, for appellee.

Before CAYCE, C.J., and LIVINGSTON and RICHARDS, JJ.

## OPINION

RICHARDS, Justice.

### Introduction

Meadowbrook Gardens, Ltd. ("Meadowbrook") appeals the summary judgment granted in favor of WFMFT Real Estate Limited Partnership ("WFMFT") in a suit brought by Meadowbrook to recover proceeds from a foreclosure sale, which were allegedly in excess of the amount then due under the installment note at issue. In three points, Meadowbrook argues that the trial court erred in granting WFMFT's motion for summary judgment because: (1) prior to the foreclosure sale, the holder of the promissory note in question failed to give timely notice of acceleration of the maturity of the future

installments due under the note; and (2) there was a failure to comply with the express terms of the promissory note and deed of trust regarding when the maturity of the future installments of the promissory note could be accelerated prior to foreclosure. Meadowbrook further argues that the trial court erred in not granting its motion for summary judgment because there was no effective acceleration of future installments under the note and the amount bid at foreclosure exceeded the amount due at that time. Because we conclude that Meadowbrook received proper notice of acceleration, we affirm the summary judgment.

### Summary of Relevant Facts

Meadowbrook executed a promissory note ("the note") dated May 12, 1982 payable to Shearson/American Express Mortgage in the principal amount of $3,479,700. The note documented Meadowbrook's indebtedness regarding its acquisition and ownership of the Meadowbrook Gardens Apartment Complex. The note provided in relevant part:

> If default be made in the payment of any installment under this Note, and if such default is not made good prior to the due date of the next such installment, the entire principal sum and accrued interest shall at once become due and payable without notice, at the option of the holder of this Note.

Meadowbrook executed a deed of trust also dated May 12, 1982, encumbering certain property owned by Meadowbrook as collateral to secure payment of the note. Section 22 of the deed of trust stated in relevant part:

> However, in the event of default in making any monthly payment provided for herein or in the Note secured hereby, and if such default is not made good prior to the due date of the next such installment ..., then in any such case, the whole principal sum of said Note shall, at the option of the holder of the Note, be deemed to have become immediately due....

On or about June 27, 1996, Multi–Family Mortgage Trust 1996–1 ("Multi–Family") became the holder of the note and grantee of the deed of trust. As of July 1, 1996, the note was 1247 days delinquent, and the amount necessary to cure the default was $1,071,087.13. By a letter dated July 1, 1996, Multi–Family made demand on Meadowbrook for payment of all sums past due under the note and gave notice to Meadowbrook that if these alleged past-due sums were not paid in full by July 12, 1996, Multi–Family would exercise its option to accelerate the maturity of the note and exercise all available rights and remedies including, but not limited to, the sale of the mortgaged property at foreclosure, as provided for in the deed of trust.

When it did not receive payment of the amount due by July 12, Multi–Family posted and served notice of sale by substitute trustee, which recited that Multi–Family "has accelerated the maturity of" the note "so that it is now wholly due and payable, but has not been paid," and stated that the foreclosure of the deed of trust would occur on August 6, 1996. By a letter dated July 15, 1996, counsel for Multi–Family advised Meadowbrook that foreclosure of the deed of trust would occur on August 6, 1996 and transmitted to Meadowbrook the foreclosure notice quoted above.

On August 5, 1996, Multi–Family assigned all its rights under the note and deed of trust to WMFMT. On August 6, 1996, WMFMT conducted a public nonjudicial foreclosure sale at the courthouse steps in Tarrant County. WMFMT was the highest bidder, bidding and paying a sum in excess of $1.5 million for the property. At the time of the foreclosure sale, the delinquent and unpaid balance on the note was $4,239,928.07.

### Procedural History

Meadowbrook sued WMFMT alleging that Multi–Family failed to comply with the default provisions of the note and failed to provide adequate notice of acceleration of the note. Based on these allegations, Meadowbrook sought judgment "for all sums bid ... at the foreclosure sale in excess of that which was due on the date of foreclosure...." WMFMT moved for summary judgment on the grounds that it had complied with the note's default provisions and provided ade-

quate notice, and Meadowbrook moved for partial summary judgment as to liability. The trial court granted WMFMT's motion and rendered judgment denying all relief sought by Meadowbrook.

## Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant and all doubts about the existence of a genuine issue of a material fact are resolved against the movant. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301–02 (Tex.1990); *Cate*, 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am.*, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *See Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *See City of Houston*, 589 S.W.2d at 678.

A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *See Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's

claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

## Did Meadowbrook Receive Adequate Notice of Acceleration?

In its first point, Meadowbrook argues that the trial court erred in granting WFMFT's motion for summary judgment, because prior to the foreclosure sale, Multi–Family failed to give timely notice of acceleration of the maturity of the future installments due under the note. In its third point, Meadowbrook contends that because proper notice of acceleration was not given, the amount bid at foreclosure exceeded the amount due at that time.

WMFMT argued in its motion for summary judgment that the letter of July 1 to Meadowbrook satisfied Multi–Family's obligation to give notice of default, to make demand for payment, and to communicate its intent to accelerate if the default was not cured. Meadowbrook contends the July 1 letter was flawed because it demanded that default be cured by July 12, ignoring the language in the note that allowed any default to be cured by the due date of the next installment, which would have been August 1.[1]

Meadowbrook further contends the July 15 letter failed to announce that Multi–Family had exercised its option to accelerate, but rather stated that notice of acceleration had occurred in the July 1 letter. Meadowbrook argues that this could not have been the case because the July 1 letter clearly stated that acceleration would occur thereafter if default was not cured by July 12. Meadowbrook contends the July 15 letter simply advised that default had not been cured by July 12, and then gave notice of the August 6 foreclosure sale. In sum, Meadowbrook challenges WMFMT's reliance on the notice of foreclosure sale to effect notice of acceleration.

WMFMT relies on *McLemore* to support its argument that notice of acceleration was

---

1. This argument is addressed under point two.

effected by the notice of foreclosure sale enclosed with the July 15 letter following the notice of intent to accelerate in the July 1 letter. *See McLemore v. Pacific Southwest Bank,* 872 S.W.2d 286 (Tex.App.—Texarkana 1994, writ dism'd).

In *McLemore,* the payee notified the maker of an installment note, that if he failed to pay the total amount due by June 3, 1988, the payee would accelerate the maturity on the loan, declare the entire amount due and payable without further demand, and foreclose and sell the property under the terms of the deed of trust on July 5, 1988. *See id.* at 291. The Texarkana Court of Appeals held that this clear, unequivocal language provided sufficient notice of the payee's *intent* to accelerate. The payee sent notice of the impending sale and, later, notice of the actual sale on July 5. The court of appeals held that "these last acts constituted 'notice of acceleration' as required by statute in this situation following a notice of intent to accelerate." *Id.*(citing *Shepler v. Kubena,* 563 S.W.2d 382, 385 (Tex. Civ.App.—Austin 1978, no writ) (actual foreclosure will constitute acceleration on an installment debt.)).

The court in *McLemore*held that the payee's notice of intent to accelerate followed by notice of impending foreclosure on July 5, 1988 and actual sale of the property constituted notice of acceleration and sale on a date certain. *See id.* The court acknowledged that the Texas Supreme Court had previously declined to decide whether, after appropriate notice of intent to accelerate, a notice of trustee's sale is sufficient to give notice that the debt has been accelerated. *See id.* at 291–92 (citing *Ogden v. Gibraltar Sav. Ass'n,* 640 S.W.2d 232, 234 (Tex.1982)). However, the Texarkana court stated, "we conclude that we may reasonably infer that a notice of intent to accelerate followed by a notice of a trustee's sale constitutes a notice of acceleration." *Id.* at 292.

■ In the present case, we also conclude that Multi–Family's July 1 notice of intent to accelerate coupled with its July 15 notice of foreclosure amounted to notice of acceleration. We, thus, overrule Meadowbrook's first point. Because notice of acceleration was effected by the July 15 letter, the entire delinquent and unpaid balance on the note was due. At the time of foreclosure, that amount was $4,239,928.07. The amount bid at foreclosure by WMFMT was $1,555,086. Because the amount bid at foreclosure did not exceed the amount then due, we overrule Meadowbrook's third point.

### Did Acceleration Violate the Terms of the Note and Deed of Trust?

■ In its second point, Meadowbrook argues that the trial court erred in granting summary judgment for WMFMT because there was a failure to comply with the express terms of the promissory note and deed of trust regarding when maturity of the future installments of the promissory note could be accelerated prior to foreclosure. Specifically, Meadowbrook contends that acceleration on July 15, 1996 was in direct conflict with the default provisions of the note and deed of trust. The relevant language in the note provided that Meadowbrook must make good on the default of *any past due installment* prior to the due date of the next installment. Accordingly, Meadowbrook contends it had until August 1, 1996, the due date of the next installment, to cure the default. We disagree.

Meadowbrook had been in default for more than three years when Multi–Family finally gave notice of intent to accelerate. The terms of the note and deed of trust did not give Meadowbrook up to the due date of the next installment to make good on the *full amount of the default.* Meadowbrook merely had until the due date of the next installment to make good *on any past due installment.* WMFMT had the right to accelerate the maturity of the note after any one of the more than 36 past due installments was not cured prior to the next installment due date. Accordingly, Multi–Family did not violate the express terms of the note and deed of trust, and Meadowbrook's second point is overruled.

### Conclusion

Having overruled all three of appellant's points on appeal, we affirm the summary judgment in favor of WMFMT.