# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00488-CV

---

### Los Arboles Tulum, L.P. and Greg Schnurr, Appellants

### v.

### Matula Family, L.P., Appellee

---

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-19-006429, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment in favor of Matula Family, L.P. in its suit against Los Arboles Tulum, L.P. and Greg Schnurr for breach of a promissory note and personal guaranty. In two issues, Schnurr argues that (1) the trial court erred in granting summary judgment on Matula's claim for breach of personal guaranty because the evidence raises a genuine issue of material fact on Schnurr's affirmative defense of material alteration of the underlying promissory note and (2) the trial court committed various errors in determining the amount of interest accrued on the note. We will affirm the trial court's judgment.

## BACKGROUND

This dispute arises from the breach of a promissory note and guaranty. In 2012, Greg Schnurr solicited Michael Matula for a loan to develop a residential community in Tulum,

Mexico.  Matula agreed, and the parties memorialized their agreement in an instrument consisting of a Promissory Note and Guaranty.

Under the Promissory Note, Matula's entity, Matula Family, L.P., loaned Schnurr's entity, Los Arboles, L.P., the principal amount of $750,000 with interest accruing monthly at pre- and post-maturity rates.  Schnurr signed the Promissory Note as follows:

**Los Arboles Tulum, L.P.**

By:    GWSLSS, LLC,
        its general partner

By:   _____
Name: Gregory W. Schnurr
Title:  Manager

Under the Guaranty, Schnurr "absolutely, irrevocably, and unconditionally guarantee[d] payment of th[e] note according to its terms to the extent as if [he] were Borrower on the note."  Schnurr signed the Guaranty as follows:

_____
Gregory W. Schnurr

Shortly thereafter, the parties executed a second instrument, an Amendment to the Promissory Note, which increased the principal amount by $100,000.  The Amendment expressly states that: "All Terms of Payment, Security, Promises, Guaranty, and Defaults of the

2

Original Note will convey to this Amendment." Schnurr signed the Amendment the same way he signed the Promissory Note:

**Los Arboles Tulum, L.P.**

By:    GWSLSS, LLC
       its general partner

By:   _____
Name: Gregory W. Schnurr
Title:  Manager

It is undisputed that Los Arboles and Schnurr never paid any of the principal and eventually defaulted, leading to Matula filing suit.

## PROCEDURAL HISTORY

Matula sued on the Promissory Note and Guaranty and asserted several other related claims. Schnurr answered with a general denial but did not assert any affirmative defenses or counterclaims.

Matula moved for partial summary judgment on liability and damages for its claims for breach of the Promissory Note and breach of the Guaranty. In support of its motion, Matula filed a declaration from its manager (Michael Matula) and accompanying amortization schedule. The schedule listed the monthly balance on the Promissory Note, Los Arboles' payments credited to that balance, and the compounding interest on the prior month's balance.

In response, Schnurr argued that he did not consent in his capacity as guarantor to the Amendment to the Promissory Note and that, as a result, the Amendment constituted a material alteration that discharged him from liability under the Guaranty. Schnurr further argued

that Matula's declaration and amortization schedule were conclusory and required additional supporting documentation. Importantly for purposes of this appeal, Schnurr did not argue in his response that the note provides for simple rather than compound interest. Nor did Schnurr challenge Matula's method of calculating the interest accrued on the note.

After a hearing, the trial court granted Matula's partial-summary-judgment motion. In its order, the trial court ruled that Matula was entitled to judgment as a matter of law on its claim against Los Arboles for breach of the Promissory Note and its claim against Schnurr for breach of the Guaranty. The trial court ordered that Matula recover a judgment, jointly and severally, from Los Arboles and Schnurr in the amount of $2,683,235.67.

Matula non-suited its remaining claims and moved for entry of final judgment. Schnurr then filed a series of amended answers that asserted new counterclaims for breach of contract and usury, arguing, for the first time, that the note provides for simple interest only and that Matula had breached the note by charging compound interest at a usurious rate. Matula objected to Schnurr's counterclaims as untimely and improperly filed without leave. Matula further argued that Schnurr's counterclaims were intertwined with, and thus precluded by, the trial court's summary judgment on Matula's claims for breach of the Promissory Note and breach of the Guaranty. The trial court struck Schnurr's amended pleadings and entered final judgment.

Schnurr moved for a new trial, arguing, for the first time, that Matula's calculation of the interest accrued on the note erroneously employed a "360-day year convention" and applied the higher, post-maturity interest rate one month too early. Schnurr's motion for new trial was overruled by operation of law.

Schnurr appeals.

4

## MATERIAL ALTERATION

In his first issue, Schnurr argues that the trial court erred in granting summary judgment on Matula's claim for breach of personal guaranty because the evidence raises a genuine issue of material fact as to whether the Amendment to the Promissory Note constitutes a material alteration that discharges Schnurr from liability under the guaranty.

Matula's initial response is that Schnurr failed to preserve the issue for our review. We disagree. Although Schnurr had not yet pleaded material alteration when he raised it in his response to Matula's partial-summary-judgment motion, and Matula objected to the defense as unpleaded and untimely raised, Matula did not obtain a ruling on its objection, and the order granting Matula's motion states that the trial court considered Schnurr's response and arguments. Therefore, the issue is preserved for our review. *See B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259–62 (Tex. 2020) (per curiam) (recital in summary-judgment order that trial court considered "evidence and arguments of counsel" affirmatively indicated that trial court considered non-movant's untimely response when movant objected to but did not obtain ruling on timeliness of response). We now turn to the merits.

Under Texas law, a guarantor is discharged from performance of a guaranty if he proves a material alteration of the underlying note. *U.S. Foodservice, Inc. v. Winfield Project Mgmt., LLC*, No. 03-14-00405-CV, 2016 WL 1639804, at *5 (Tex. App.—Austin Apr. 20, 2016, no pet.) (mem. op.). In a claim for breach of a personal guaranty, material alteration is an affirmative defense. *Id.* To defeat summary judgment, then, Schnurr had the burden to produce evidence raising a fact issue on each element of the defense. That is, Schnurr had to produce evidence raising fact issues as to whether there had been:

5

> (1) a material alteration of the promissory note (i.e., one impacting the risk that Schnurr had agreed to assume),
>
> (2) made without his consent, and
>
> (3) to his detriment (i.e., prejudicial to his interest).

*Id.* (elements of material-alteration defense).

It is undisputed that the Amendment itself satisfies the first and third elements. The Amendment is a material alteration of the Promissory Note to Schnurr's detriment: By increasing the principal balance of the Promissory Note, the Amendment increased the risk Schnurr agreed to assume and thereby prejudiced Schnurr's interest.

The issue here is whether Schnurr produced evidence of the second element— evidence that Los Arboles and Matula agreed to increase the balance of the Promissory Note without Schnurr's consent. Schnurr did not produce any affidavit, declaration, deposition testimony, or contemporaneous communication stating that he was unaware of or otherwise did not consent to the Amendment. And the Amendment expressly states that the Guaranty "will convey" to the amended note and is signed by Schnurr himself.

Schnurr nevertheless contends that his signature of the Amendment does not show he consented in his personal capacity as guarantor. Rather, Schnurr insists, his signature only shows he consented in his corporate capacity as representative of Los Arboles. Schnurr's contention is presumably based in part on an apparent discrepancy between the first instrument (consisting of the Promissory Note and Guaranty) and the second instrument (consisting of the Amendment).

In the first instrument, there are two signatures, one for the Promissory Note and one for the Guaranty. Schnurr's signature for the Promissory Note includes a signature block

with his corporate title and other information indicating that he is signing in his corporate capacity on behalf of Los Arboles. Schnurr's signature for the Guaranty contains no such information, indicating he is signing in his personal capacity.

In the second instrument, there is only one agreement (the Amendment), and there is only one signature. Schnurr's signature for the Amendment is the same as his signature for the Promissory Note: It includes the same signature block indicating Schnurr is signing in a corporate capacity.

So, what Schnurr seems to be suggesting is that because the Amendment doesn't include a signature line like the one for the Guaranty, but does include a signature line like the one for the Promissory Note, his signature of the Amendment shows he signed in his corporate capacity but not in his personal capacity. The two different types of signature in the first instrument show that the parties know how to distinguish a signature in a corporate capacity from a signature in a personal capacity. Had they intended that Schnurr sign the Amendment in his personal capacity, they would have included a second signature line without a signature block, like the one for the Guaranty. Because they did not, they did not intend that Schnurr sign in his personal capacity. And because Schnurr didn't sign in his personal capacity, he didn't consent in his personal capacity as guarantor.

We disagree. On these facts, Schnurr's signature to the Amendment is evidence that he consented in his personal capacity as guarantor. This is because Schnurr is the owner and manager of Los Arboles. And as owner and manager, it was his decision to borrow the additional funds. Because it was his decision to amend the note, he cannot claim that he did not consent to it.

7

The basic rationale of the defense of material alteration is that it is unfair to hold a guarantor liable for a contract when the terms are changed without his consent, since the guarantor agreed to assume the risks of the original contract but not the risks of the altered one. *See Old Colony Ins. v. City of Quitman*, 352 S.W.2d 452, 455–56 (Tex. 1961). Thus, in a lending context, the defense will typically apply when the person who materially alters the note on behalf of the borrower is distinct from the person who guaranteed the note. *See, e.g., Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464 (Tex. 1991) (per curiam) (individual guarantor raised fact issue whether shareholders acting on behalf of corporate borrower materially altered contract). In such a case, the former person alters the note without the latter person knowing about or otherwise agreeing to the alteration, so the alteration is made without the latter's consent. But here, the former person couldn't have altered the note without the latter person knowing about it, since the former and the latter are one and the same: Schnurr.

Texas courts have recognized that when "[t]he only alteration of the [note] was made by the guarantor himself, who signed the [amendment] in his corporate capacity," the alteration cannot be said to have been made without the guarantor's consent. *Chambers v. NCNB Tex. Nat'l Bank*, 841 S.W.2d 132, 135 (Tex. App.—Houston [14th Dist.] 1992, no writ). Here, not only was the alteration made by the guarantor himself, it explicitly states that the terms of the Guaranty "will convey" to the Amendment. And the Amendment contains no indicia otherwise indicating that Schnurr did not consent in his personal capacity, such as a second, unsigned signature line for the note's guarantor. *See, e.g., Beal Bank, SSB v. Biggers*, 227 S.W.3d 187, 192 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that corporate debtor's president and secretary did not consent to loan modification as guarantors when they

8

signed modification in their corporate capacities and as "Borrower" but left blank signature line for "endorsers, guarantors, and/or sureties").

"This is not a case in which [a] hard-working and loyal company employee[]" has been "lured into personally guaranteeing the debts of [his] employer despite the fact that [he] sign[ed] the document solely in [his] official capacity." *84 Lumber Co. v. Powers*, 393 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (cleaned up). "Rather, this is the [owner] securing credit for his own business." *Id.*

We hold Schnurr failed to produce evidence raising a fact issue on the second element of his affirmative defense. Therefore, we overrule Schnurr's first issue.

**INTEREST**

In his second issue, Schnurr contends that the trial court committed three errors in determining the amount of interest accrued on the note. First, Schnurr contends that the trial court erroneously construed the note as providing for compound rather than simple interest. Second, Schnurr contends that the trial court erroneously used "a 360-day year convention." Third, Schnurr contends that the trial court erroneously applied the higher, post-maturity interest rate one month too early.

Matula responds that Schnurr has waived these arguments because he did not raise them until after the trial court granted summary judgment. We agree with Matula.

Schnurr first raised his simple-interest argument indirectly through counterclaims for breach of contract and usury. Schnurr asserted these counterclaims in second, third, and fourth amended answers filed without leave after the trial court granted summary judgment on Matula's claims for breach of the Promissory Note and breach of the Guaranty—including

9

summary judgment on the amount of interest that had accrued. In other words, Schnurr first raised his argument that the note provides for simple interest after the trial court rendered judgment on interest.

Matula objected that Schnurr's counterclaims were improperly filed without leave after the rendition of summary judgment. *See Brumfield v. Williamson*, 634 S.W.3d 170, 211 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) ("A trial court cannot grant a motion to amend the pleadings once it renders summary judgment."). Matula further objected that the basis for Schnurr's counterclaims—Schnurr's argument that the note provides for simple rather than compound interest—was "intertwined with, and precluded by, the trial court's summary judgment on [Matula's] note claim[]." *HHH Farms, L.L.C. v. Fannin Bank*, 648 S.W.3d 387, 419 (Tex. App.—Texarkana 2022, pet. denied) (trial court's grant of summary judgment on bank's breach-of-note claim precluded debtors' usury counterclaim when usury counterclaim was "intertwined" with note claim); *see also Sturm v. Muens*, 224 S.W.3d 758, 765 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (although partial summary judgment in favor of plaintiff's breach-of-note claim did not expressly adjudicate defendant's usury counterclaim, summary judgment nevertheless constituted indirect ruling on counterclaim, since "a final judgment granting relief on both the note claim and usury claim would contradict itself"). The trial court agreed and, in its final judgment, ordered that Schnurr's counterclaims be stricken. On appeal, Schnurr does not challenge the trial court's order, so his stricken counterclaims do not preserve his simple-interest argument for appeal.

Schnurr raised his simple-interest argument again in his motion for new trial, this time directly arguing that "the note at issue does not provide for the amount of interest that was

incorporated in the Court's Final Judgment because [Matula] incorrectly charged [Schnurr] *compound* interest under the note." This was too late.[1]

When a party fails to raise an argument to defeat summary judgment in its response to the summary-judgment motion, the party normally waives his right to raise that argument in a post-judgment motion. *See* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797–98 (Tex. 2008) (per curiam) (argument first raised by non-movant in post-judgment filing did not preserve argument for appeal); *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 307 n.3 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("New arguments to defeat summary judgment presented after the trial court has granted summary judgment do not warrant reversal."). Likewise, when a party raises an argument for the first time in a

---

[1] The dissent contends that a "complaint regarding an interest award" may be preserved by a motion for new trial or a motion to amend or to correct the judgment. Not necessarily. It depends in part on the circumstances under which the issue arises. When, as here, the interest rate is a disputed issue of contractual interpretation on which a party moves for summary judgment, the proper time to raise and thus preserve any argument against that interpretation is in the response to the motion for summary judgment—not after the trial court has considered and ruled on it. *See* Tex. R. App. P. 33.1(a)(1); Tex. R. Civ. P. 166a(c); *Unifund CCR Partners v. Weaver*, 262 S.W.3d 796, 797–98 (Tex. 2008) (per curiam); *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 307 n.3 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). In none of the cases cited by the dissent was the applicable interest rate the subject of a motion for summary judgment. For example, two of the cited cases involve pre- and post-judgment interest. *Keith v. Keith*, 221 S.W.3d 156, 172 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *Miller v. Kendall*, 804 S.W.2d 933, 944 (Tex. App.—Houston [1st Dist.] 1990, no writ). So, the issues regarding their award (or lack thereof) didn't arise until after the trial court had rendered judgment—and even then, there wouldn't have been any fact issue regarding their calculation, since their rates are set by statute. *See, e.g.*, Tex. Fin. Code § 304.003. And in a third case, although the trial court modified the interest award in response to a motion for new trial, the parties *agreed* that the interest award should have been modified, so there wasn't any dispute for the trial court to resolve—and thus no complaint to preserve. *McLemore v. Pacific Sw. Bank, FSB*, 872 S.W.2d 286, 290–91 (Tex. App.—Texarkana 1994, writ dism'd).

post-judgment motion, that argument generally isn't preserved for appellate review. *See* Tex. R. App. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a ***timely*** request, objection or motion . . . ." (emphasis added)); *Weaver*, 262 S.W.3d at 797–98; *Kelley-Coppedge, Inc. v. Highlands Ins.*, 980 S.W.2d 462, 467 (Tex. 1998) (holding that party waived argument raised for first time in new-trial motion). Because Schnurr did not raise his simple-interest argument until after the trial court had granted summary judgment on interest, we hold that he has waived the argument for appellate review and we may not consider it as grounds for reversal.

Similarly, Schnurr's other arguments regarding the calculation of interest—that the trial court erroneously used a 360-day year convention and erroneously applied the higher, post-maturity interest rate one month too early—could have been raised, and should have been raised, in response to Matula's summary-judgment motion. They were not. Instead, Schnurr waited until Matula's summary-judgment motion had been filed, heard, and ruled on. Thus, the only evidence regarding the calculation of interest that was before the trial court at summary judgment was the unchallenged calculation by Matula. Because Schnurr did not raise his arguments challenging Matula's calculation of interest until after the trial court had granted summary judgment on interest, we hold that he has waived the arguments for appellate review and we may not consider it as grounds for reversal.

We overrule Schnurr's second issue.

**CONCLUSION**

For the reasons above we affirm the trial court's judgment.

_____

Maggie Ellis, Justice

Before Justices Kelly, Crump, and Ellis
   Dissenting Opinion by Justice Crump

Affirmed

Filed:   August 29, 2025