Opinion issued November 26, 2003












     



In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00068-CV




ANTON EMIL FRAPS, III, MARTHA FRAPS, AND A.E.F., INC.,
Appellants

V.

BETTY CALVERT LINDSAY AND B.D. SHIPWASH, Appellees




On Appeal from the 61st District Court 
Harris County, Texas
Trial Court Cause No. 2000-44970




MEMORANDUM OPINION

          Appellants, Anton Emil Fraps, III, (“Fraps”), Martha Ann Fraps, and A.E.F.,
Inc., have dismissed their appeal as to appellee Betty Calvert Lindsay (“Lindsay”).


 
As a result, the only issue remaining on appeal pertains to appellee B.D. Shipwash
(“Shipwash”). In deciding that issue, we determine whether the trial court erred in
concluding that Fraps’s claims against Shipwash for breach of a promissory note were
barred by limitations. Specifically, we determine whether legally sufficient evidence
was presented to support an implied finding by the trial court that Fraps accelerated
the maturity of the promissory note 12 years before he filed suit against Shipwash.
          We affirm.
Factual Background and Procedural History
          The facts of this complex property case are not easily summarized. As such,
we discuss only the facts that are necessary to place the sole issue remaining in this
appeal in proper perspective. 
          Fraps owned an equitable half-interest in a 34-acre tract of property in Harris
County, Texas (“the property”) from 1977 until 1983. In 1983, Fraps agreed to sell
his half-interest in the property to appellee Shipwash for cash and a promissory note. 
At that time, appellee Betty Calvert Lindsay owned the other equitable half-interest
in the property and had acted as the managing owner of the property since 1981. 
          Shipwash and Fraps signed a contract of sale (“the sale contract”) on August
15, 1983 in which Fraps agreed to sell Shipwash his one-half interest in the property. 
Shipwash agreed to pay Fraps $65,000 in cash and to sign a promissory note for the
balance of the principal amount of $174,604; interest would accrue at a rate of 10
percent. Shipwash also agreed to pay the five remaining payments of a promissory
note owed on the property to Fred and Carolyn Rylander (“the Rylander note”). The
sale contract further provided that Fraps would convey his interest in the property to
Shipwash or his designee. The sale contract made no reference to a deed of trust,
expressed vendor’s lien, or any other collateral to secure the promissory note.
          On November 9, 1983, Shipwash and Lindsay signed a joint operating
agreement. The agreement acknowledged that Lindsay would be the sole record
owner of the property. Lindsay would hold legal title to the property for the benefit
of herself and Shipwash. In the joint operating agreement, Shipwash again agreed to
pay the remaining balance on the Rylander note. The joint operating agreement
further provided that if Shipwash failed to pay the Rylander note, Shipwash’s interest
in the property would be forfeited and “that Lindsay shall own 100% interest in the
Property.” 
          On May 17, 1984, Fraps executed a general warranty deed, conveying to
Lindsay, as trustee for Shipwash, all of his one-half divided interest in the property. 
On that same date, as required by the sale contract, Shipwash signed a promissory
note (“the promissory note”), agreeing to pay Fraps $174,500. Shipwash agreed to
make 10 payments of interest only, followed by five payments of 20 percent of the
unpaid principal and interest. The payments were due on the 20th day of September
of each year from 1984 through 1998. The promissory note made no mention that it
was secured by a deed of trust or other liens.
          Shipwash paid the 1983 through 1986 payments on the Rylander note. But in
1987, Shipwash failed to make the payment. Pursuant to the terms of the joint
operating agreement with Lindsay, Shipwash’s default on the Rylander note resulted
in termination of Shipwash’s interest in the property.
          Shipwash made the annual September payments on the promissory note from
1984 through 1987. Then in September 1988, Shipwash failed to make the scheduled
payment to Fraps. 
          In October of 1988, Fraps contacted Lindsay and told her that Shipwash had
failed to make payment on the promissory note. Fraps then convinced Lindsay to
sign an instrument entitled “Formal Intervivos Trust” on October 17, 1988. The trust
document stated that, as the beneficiary of the intervivos trust, it was Fraps’s intent
that Lindsay be appointed trustee of the entire property for the benefit of Fraps. 
Shortly therafter, Fraps contacted Lindsay and informed her that he intended to sell
the property. Lindsay told Fraps that he had no right to sell the property.
          In December 1988, Fraps sent Shipwash a written demand to pay the
promissory note. In the demand, Fraps threatened to sell or mortgage the property in
the event that Shipwash did not make the payment. 
          In January and March of 1989, Fraps and his wife, appellant Martha Ann Fraps
(“Mrs. Fraps”), signed and recorded two deeds (“AEFI deeds”) purporting to convey
the entirety of the property to a company owned by Mrs. Fraps, appellant A.E.F., Inc.
(“AEFI”). In an attempt to validate the AEFI deeds, Fraps altered the intervivos trust
document signed by Lindsay. Fraps covered the October 17, 1988 date on the
document with liquid paper and substituted the date of November 9, 1983. Fraps then
recorded the altered trust document in the real property records on November 20,
1989.
          On August 7, 2000, Fraps then recorded in the real property records a
photocopy of a deed of trust purportedly signed by Shipwash (“Shipwash deed of
trust”) dated May 14, 1984. The Shipwash deed of trust stated that it secured
payment of the Shipwash note to Fraps with the entirety of the property. The
Shipwash deed of trust was attached to the affidavit of Fraps in which Fraps stated
that the attached deed of trust was a copy of the original deed of trust. 
          As allowed by the Shipwash deed of trust, Fraps named W. Briscoe Swan
(“Swan”) as substitute trustee. On August 7, 2000, Swan sent a document entitled
“Substitute Trustee’s Notice of Sale” to Shipwash. In the notice, Swan stated that
Shipwash had defaulted on the note described in the Shipwash deed of trust (i.e., the
Shipwash note). Swan also notified Shipwash that Shipwash’s interest in the
property, as described in the deed of trust, would be sold at a foreclosure sale the
following month.
          To prevent foreclosure of the property, Lindsay filed suit on August 31, 2000,
naming Fraps, Mrs. Fraps, AEFI, and Swan as defendants. Lindsay alleged that the
defendants had improperly clouded the property’s title by illegally recording various
fraudulent deed and lien documents in the real property records. Lindsay sought to
quiet title to the property in her name, requested injunctive relief to prevent
foreclosure of the property, and requested monetary damages. Fraps counterclaimed
against Betty Lindsay, seeking one-half ownership interest in the property and
monetary damages. Fraps also filed a third-party claim against Shipwash, asserting
that Shipwash had breached the promissory note. Fraps sued Shipwash for the
amount of the promissory note and requested that the trial court recognize that Fraps
had an implied vendor’s lien on the property relating to the one-half interest that
Fraps sold to Shipwash. Fraps further sought to foreclose the implied vendor’s lien.
          Following a bench trial, the trial court signed a judgment ordering that the
various deeds, liens, and trust documents that Fraps had filed against the property
were “invalid and of no force and effect.” In the judgment, the trial court ordered that
the title to the property be quieted in Lindsay. The judgment also awarded Lindsay
damages and attorney’s fees against Fraps, Mrs. Fraps, AEFI, and Swan. The trial
court further rendered judgment, providing that Fraps recover nothing on his
counterclaims against Lindsay. 
          In support of its judgment, the trial court entered findings of fact and
conclusions of law. Included in the trial court’s findings of fact were the following:
(1) the Shipwash deed of trust was “a forgery, as defined in Section 32.21 of the
Texas Penal Code”; (2) the Shipwash Note was unsecured; and (3) Fraps had “waived
any implied vendor’s lien with respect to the property.” The trial court also stated in
a conclusion of law that the defendants knew or should have known that the AEFI
deeds, the intervivos trust, and the Shipwash deed of trust “were fraudulent, as
described by Section 51.901(c), Government Code.”
          The trial court also entered judgment that Fraps’s third-party claim against
Shipwash was barred by limitations, and that Fraps take nothing by his third-party
claim against Shipwash. The trial court filed “Additional Findings of Fact and
Conclusions of Law,” which related specifically to the trial court’s judgment that
Fraps take nothing by his third-party claim against Shipwash. These “Additional
Findings of Fact and Conclusions of Law” were as follows:
I.
FINDINGS OF FACT 
 
The Court finds that the evidence adduced in connection with Defendant
Anton Emil Fraps, III’s (“Fraps”) claims against Third Party Defendant
B.D. Shipwash (“Shipwash”) establishes the facts of the case as follows:
 
1.Shipwash executed a Promissory Note dated May 17, 1984, in the
original principal amount of $174,604.00 payable to the order of
Fraps.
 
2.The Note provided for payment in fifteen (15) consecutive annual
payments, with the first ten (10) installments being in the amount
of interest only, with the five (5) remaining annual installments
being in an amount equal to twenty (20) percent of the unpaid
principal balance owing thereon, plus accrued interest, with the
first such installment being due and payable on or before
September 20, 1984, and continuing on the same day of each year
thereafter until the 20th day of September, 1988.
 
3.Shipwash made the installment payments which were due on
September 20, 1984, September 20, 1985, September 20, 1986
and September 20, 1987; however, he failed to make any
installment payment thereafter, and default occurred on
September 20, 1988.
 
4.Fraps made demand upon Shipwash for payment on December
15, 1988.
 
5.Fraps testified that he was aware that his cause of action accrued
upon default and that he regarded the Note to be accelerated.
 
6.Any and all Deeds of Trust purportedly executed by Shipwash to
secure the Note are invalid and the Note was an unsecured note.
 
7.Fraps’s lawsuit against Shipwash to enforce payment of the Note
was filed on September 20, 2000, 12 years after default and
accrual of the cause of action.

II.
CONCLUSIONS OF LAW
 
          1.       All of Fraps’s claims and causes of action against Shipwash are barred
by limitation.
 
2.Fraps is not entitled to recover any damages from Shipwash.

Issues on Appeal
          Fraps, Mrs. Fraps, and AEFI appealed the trial court’s judgment in seven
issues.


 While the appeal was pending, Fraps, Mrs. Fraps, and AEFI voluntarily
dismissed their appeal as it relates to Lindsay. Thus, only one appellate issue
remains; that is, Fraps’s fifth issue in which Fraps complains that the trial court erred
in concluding that Fraps’s claims against Shipwash are barred by limitations and that
Fraps should recover nothing from Shipwash. Fraps argues that the evidence was
legally insufficient to support a finding by the trial court that Fraps accelerated the
maturity of the promissory note 12 years before Fraps filed suit against Shipwash.



Scope and Standard of Review
          Findings of fact in a case tried to the court have the same force and dignity as
a jury’s verdict on questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991); Eller Media Co. v. City of Houston, 101 S.W.3d 668, 673 (Tex.
App.—Houston [1st Dist.] 2003, pet. denied). If findings of fact are not challenged,
they are binding on the parties and on this Court. Eller Media, 101 S.W.3d at 674;
Cushnie v. State Bar of Texas, 845 S.W.2d 358, 360 (Tex. App.—Houston [1st Dist.]
1992, writ denied). When challenged, findings of fact are not conclusive if there is
a complete reporter’s record. Eller Media, 101 S.W.3d at 674. When there is a
reporter’s record, as here, the trial court’s findings of fact are binding only if
supported by the evidence. Id. 
          The trial court’s findings of fact are reviewable for legal sufficiency of the
evidence by the same standard used when reviewing a jury’s finding. In reviewing
a legal-sufficiency point, we consider only the evidence and inferences that tend to
support the finding, disregarding all evidence and inferences to the contrary. Lee
Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001); Eller Media, 101
S.W.3d at 674. If more than a scintilla of evidence exists, it is legally sufficient. Lee
Lewis Constr., 70 S.W.3d at 782. More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by reasonable
minds about a vital fact’s existence. Id at 782-83. 
          We review a trial court’s conclusions of law after a bench trial de novo to
determine their correctness from the facts found. Houston Land & Cattle Co., L.C.
v. Harris County Appraisal Dist., 104 S.W.3d 622 , 624 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied). An incorrect finding of fact or conclusion of law does not
warrant a reversal if the judgment is otherwise correct. Vaughn v. DAP Fin. Servs.,
Inc., 982 S.W.2d 1, 6 (Tex. App.—Houston [1st Dist.] 1997, no pet.) (citing Able v.
Able, 725 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref’d n.r.e.)). 
Reversal is only proper when the reviewing court is convinced that a different verdict
would have been rendered but for the error. Id.
Discussion
Acceleration of the Promissory Note
          In applying the statute of limitations, a cause of action accrues when a set of
facts comes into existence that gives a claimant a right to seek a remedy in the courts. 
Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990). A cause of
action on a note accrues when the note matures by its own terms. Hughes v. Stovall,
135 S.W.2d 603, 606 (Tex. Civ. App.—Amarillo 1939, writ dism’d); see also Tex.
Civ. Prac. & Rem. Code § 16.035(e) (Vernon 2002) (providing that limitations
period does not begin to run until maturity date of last installment due under note). 
If the holder of a note accelerates maturity of a note and declares the entire principal
due, limitations begin to run from the date of an effective acceleration. See
McLemore v. Pacific Southwest Bank FSB, 872 S.W.2d 286, 292-93 (Tex.
App.—Texarkana 1994, writ dism’d by agr.) (holding note accelerated and matured
on date of foreclosure). Effective acceleration of a note requires two acts: (1) notice
of intent to accelerate, and (2) notice of acceleration. Holy Cross Church of God in
Christ v. Wolf, 44 S.W.3d 562, 566 (Tex. 2001). Both notices must be “clear and
unequivocal.” Id. Although accrual is a legal question, whether a holder has
accelerated a note is a fact question. Id. at 568.
          In the instant case, the promissory note contained an optional acceleration
clause that provided, in part, as follows: 
In the event of a default in the payment of any installment of principal
or interest when due or in the performance of any of the covenants
securing this Note, the Payee [Fraps] may declare the entire
indebtedness evidenced hereby due and payable after thirty (30) days
written notice to Maker [Shipwash], . . . . 
          The trial court explicitly found that (1) Shipwash defaulted on the promissory
note on September 20, 1988; (2) Fraps made demand for payment from Shipwash on
December 15, 1988; (3) Fraps testified that he regarded the promissory note to be
accelerated; and (4) Fraps’s cause of action against Shipwash accrued 12 years before
Fraps filed suit. The promissory note did not mature by its own terms until 1998. 
Thus, we may presume that the trial court also impliedly found that Fraps had
exercised his rights under the optional acceleration clause and effectively accelerated
the maturity of the promissory note 12 years before filing suit. Tex. R. Civ. P. 299
(stating when one or more elements of claim or defense have been found by trial
court, omitted unrequested elements, when supported by evidence, will be supplied
by presumption in support of the judgment); see also In re K.R.P., 80 S.W.3d 669,
673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (noting omitted finding,
supported by the evidence, may be supplied by presumption that it supports
judgment). 
          Fraps challenges the legal sufficiency of the trial court’s implied finding that
Fraps accelerated the maturity of the promissory note 12 years before filing suit
against Shipwash. Because Fraps challenges the legal sufficiency of an adverse
finding on which he did not have the burden of proof, we must view the evidence in
a light that tends to support the finding of the disputed fact and disregard all evidence
and inferences to the contrary. Lee Lewis Constr., 70 S.W.3d at 782. As mentioned
above, anything more than a scintilla of evidence is legally sufficient to support a
judgment. Id. at 782-83.
          The record reveals that Fraps sent a letter to Shipwash postmarked December
13, 1988, which read as follows:
Dear Bill [Shipwash],
 
Your payments are due on the 20th of September of each year. 
Your payments have been late for the past three years and interest has
accrued as follows:
 
In the year 1986, you paid on October 20th. That means that you
were 19 days late at $45.54 per day, which equals $921.52. I added this
back into the principal as I did not receive any reimbursement.
 
In the year 1987, you paid on November 30, 1987. That means
that you 71 days late at $48.09 per day which equal[s] $3492.00 plus
$1013.67 principal plus interest for 1986. This will bring your new
balance as of November, 1988, to $179,109.67.
 
This year you are even running further behind than the previous
year. I need the money to pay taxes and I am sorry that you are having
such a hard time as I am too. I am going to have to find a way to sell or
mortgage the property if you cannot come up with your payment plus the
late interest by December 15, 1988. Your 1988 interest is accrued at a
rate of $54.00 per day.
          The letter notified Shipwash that if he failed to pay the past due payment and
interest, Fraps would “sell or mortgage the property,” presumably by first
implementing foreclosure. Viewing the evidence as we must, we conclude that the
letter was legally sufficient evidence of Fraps’s notification of his intent to accelerate. 
See Meadowbrook Gardens, Ltd. v. WMFMT Real Estate Ltd. P’ship, 980 S.W.2d
916, 919 (Tex. App.—Fort Worth 1998, pet. denied) (concluding that letter sent to
mortgagee requesting payment of all sums past due under note and giving notice that
if past-due sums were not paid in full by date certain, mortgagor would exercise its
option to accelerate maturity of note and sell property served to show intent to
accelerate).
          We next review the record to determine whether legally sufficient evidence was
presented to show that Fraps gave notice of acceleration to Shipwash following
Shipwash’s 1988 default. 
          Fraps has maintained in the trial court and on appeal that he retained an implied
vendor’s lien when he sold his half-interest in the property to Shipwash. When
Shipwash defaulted on the promissory note, Fraps did not seek to enforce his claimed
implied vendor’s lien through foreclosure. Rather, Fraps sought to regain a recorded
title interest in the property through unconventional means. As previously
mentioned, Fraps convinced Lindsay to sign an intervivos trust on October 17, 1988. 
The trust document stated that Fraps appointed Lindsay as trustee of the entire
property. The trust document further provided that it was Fraps’s intent, as the
beneficiary of the trust, that Lindsay “be empowered” by the intervivos trust “to
manage, sell, renovate, refurbish, transfer or convey” the property for the benefit of
Fraps. By appointing Lindsay as trustee, the intervivos trust gave the impression that
Fraps maintained an ownership interest in the entire property. 
          Referring to the intervivos trust that he and Lindsay signed, Fraps testified that
he had not accelerated the promissory note because he “got a trust agreement for his
half of the property.” Thus, a reasonable inference can be drawn that Fraps sought, 
by way of the intervivos trust, to enforce his claimed implied vendor’s lien without
the need and expense of a foreclosure proceeding and to reestablish his ownership
interest in the property. A reasonable inference can also be drawn that Fraps sought
further to enforce his claimed implied vendor’s lien by filing the AEFI deeds in
January and March of 1989. 
          We conclude that evidence of the affirmative acts by Fraps—obtaining the
intervivos trust and filing the AEFI deeds—combined with Fraps’s notice of intent
to accelerate, constitutes legally sufficient evidence to support a finding that Fraps
gave notice of acceleration to Shipwash. See McLemore, 872 S.W.2d at 292 (stating,
“[W]e conclude that we may reasonably infer that a notice of intent to accelerate
followed by a notice of a trustee’s sale constitutes a notice of acceleration.”); see also
Meadowbrook Gardens, 980 S.W.2d at 919 (concluding notice of intent to accelerate
coupled with notice of foreclosure amounted to notice of acceleration).


 
Quasi-Admission
          Fraps also testified at trial that the promissory note “matured” when Shipwash
defaulted on the 1988 payment. Because the promissory note did not mature by its
own terms at that time, a reasonable inference could be drawn that the note “matured”
because it had been accelerated. The trial court apparently made such an inference
in entering its fifth finding of fact, which stated: “Fraps testified that he was aware
that his cause of action accrued upon default and that he regarded the Note to be
accelerated.” 
          Shipwash urges that Fraps’s testimony on this point amounted to a judicial
admission. Though Fraps’s testimony did not rise to the level of a judicial admission,
it was a “quasi-admission.” 
          Our supreme court has stated, “A party’s testimonial declarations which are
contrary to his position are quasi-admissions.” Mendoza v. Fidelity & Guar. Ins.
Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980). Here, Fraps’s testimony that
the promissory note matured at the time of default was contrary to his position that
he did not accelerate the note; thus, it is a quasi-admission. As such, it constitutes
“some evidence” that the promissory note was accelerated. See id. The fact that an
admission is an opinion or conclusion does not prevent its use as substantive evidence
on a material issue. Id. Rather, the trier of fact decides the weight to be given such
admissions. Id. Here, the trial court, as trier of fact, afforded greater weight to
Fraps’s quasi-admission that the promissory note matured at the time of Shipwash’s
default than it afforded to Fraps’s contrary testimony that he had not accelerated the
note. 
          In his brief, Fraps states as follows: “Appellees apparently would rewrite Texas
law by allowing a promissory note to mature when the payee . . . thinks . . . maybe .
. . it has.” Though Fraps “belief” may not be probative of whether the promissory
note had matured by acceleration, his testimony, as a quasi-admission, constituted
substantive evidence. Such evidence alone amounted to more than a scintilla
supporting the trial court’s implied finding that Fraps accelerated the maturity of the
promissory note following Shipwash’s default.
Conclusion
          Viewing the evidence as we must, we hold that legally sufficient evidence was
presented to support the trial court’s implied finding of fact that Fraps accelerated the
Shipwash note following Shipwash’s default. Accordingly, the trial court also
properly concluded that Fraps’s cause of action against Shipwash for breach of the
promissory note accrued 12 years before Fraps filed suit against Shipwash.
          When Fraps’s cause of action against Shipwash accrued, Fraps’s claims to
foreclose his purported implied vendors’ lien and to enforce the promissory note were
both subject to a four-year statute of limitations. Tex. Civ. Prac. & Rem. Code
§ 16.035(a) (Vernon 2002) (providing that “A person must bring suit for the recovery
of real property under a real property lien or the foreclosure of a real property lien not
later than four years after the day the cause of action accrues.”); Whittle v. MCorp
Properties, 17 S.W.3d 718, 720 (Tex. App.—Amarillo 2000, no pet.) (explaining that
four-year statute of limitations found in Texas Civil Practice and Remedies Code
section 16.004 applied to action on installment note prior to enactment of Texas
Business and Commerce Code section 3.118, which provides for a six-year statute of
limitations and has effective date of January 1, 1996). The respective four-year
statutes of limitations applicable to Fraps’s claims ran almost eight years before Fraps
filed his third-party action against Shipwash on September 20, 2000. Thus, we
further hold that the trial court did not err in concluding that Fraps’s claims against
Shipwash were barred by limitations and that Fraps should take nothing by way of
those claims.
 

          We overrule appellants’ fifth issue and affirm the portion of the trial court’s
judgment providing that Fraps take nothing by his third-party claim against Shipwash.
 
 
                                                             Laura Carter Higley
                                                             Justice

Panel consists of Justices Hedges, Nuchia, and Higley.