COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| ANDRE K. KARAM d/b/a ANDRE KARAM COMPANY, | § | No. 08-12-00114-CV |
| Appellant/Cross-Appellee, | § | Appeal from the |
| v. | § | 327th Judicial District Court |
| SEOK LEE BROWN, | § | of El Paso County, Texas |
| Appellee/Cross-Appellant. | § | (TC# 2010-4186) |

## **O P I N I O N**

In this wrongful-foreclosure action, both parties appeal from the trial court's judgment in favor of Seok Lee Brown and against Andre K. Karam d/b/a Andre Karam Company.   For the reasons discussed below, we affirm in part and reverse and remand in part.

### **FACTUAL AND PROCEDURAL BACKGROUND**

In August 2007, Brown purchased commercial real property from Karam, executing a $300,000 note and deed of trust in favor of Karam.   The note was secured by the deed of trust and a vendor's lien on the property.   Both the note and deed of trust authorized the acceleration of the unpaid principal balance and earned interest upon default.

Karam's counsel sent Brown a letter, dated July 9, 2010, notifying her that she was in default under the note for failing to make installment payments for six of the first seven months of 2010 and under the deed of trust for failing to pay the 2009 real property taxes.   The letter further

informed Brown she could cure the default by paying the amount owed but if she failed to do so, the entire debt would be immediately due and payable. Four days later, Karam's counsel sent Brown another letter. Dated July 13, 2010, the letter informed Brown that "[i]f [she] fail[ed] to cure the default as provided in [the] July 9, 2010 letter, the entire principle balance is hereby declared to be due and payable plus all accrued unpaid interest." Enclosed was "a copy of a Notice of Substitute Trustee's Sale which has been posted this date for the public sale of the said property [on August 3, 2010] . . . ." Brown never cured the default and the property was sold to Karam on August 3, 2010.

Brown sued Karam for declaratory relief, wrongful foreclosure, and breach of contract. Brown alleged the foreclosure sale was invalid because Karam improperly curtailed her contractual right to cure by prematurely accelerating the note and posting the property for sale. Brown also alleged the foreclosure was wrongful because she was not in default. At trial, both parties stipulated to Brown's payment history for 2010.[1] The payment history admitted into evidence reflected that Brown made no payments for April and June but had made partial payments for other months, including one in July for $649.41. Brown presented additional evidence regarding her payments. Karam's corporate representative, Cecil Karam, testified she received a $2,954 cashier's check from Brown in March that should have been credited as April's 2010 payment but was not. Cecil also testified she received Brown's "July 2010 payment" "about mid-July."

---

[1] The parties also stipulated to each other's attorney's fees.

2

After taking the matter under advisement, the trial court issued findings of fact and conclusions of law. The trial court's findings and conclusions prompted both parties to seek additional relief. Brown requested leave to file a trial amendment to include Cecil's admission that Brown's July 2010 payment was received in mid-July as an independent basis for wrongful foreclosure. Brown also moved to enter judgment. Karam sought to reopen the case to permit him to introduce evidence that the $649.41 payment was made in June 2010, not mid-July 2010 as found by trial court.

The trial court denied Brown's motion for leave to file a trial amendment and Karam's motion to reopen the case. With respect to Brown's motion for entry of judgment, the trial court denied her request to have the final judgment include a credit for the April 2010 payment and conditional appellate attorney's fees. The trial court did, however, award Brown $111,645.51 in damages and $22,475 in attorney's fees.

## KARAM'S ISSUES ON APPEAL

Karam raises five issues, arguing the trial court erred in finding that Brown made certain payments, in concluding the note had been prematurely accelerated and that he had waived his right to accelerate the note, and in failing to reopen the case for the purpose of admitting additional evidence.

### *NOTICE OF ACCELERATION*

In his first issue, Karam argues the trial court erred in concluding that the Notice of Substitute Trustee' Sale constituted notice of acceleration. We disagree.

### Standard of Review

3

We review a trial court's conclusions of law *de novo* and uphold them if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Although a trial court's conclusions of law may not be challenged for factual sufficiency, we may review the legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id*. If a conclusion of law is erroneous, but the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id*.

## Applicable Law

To lawfully exercise an option to accelerate upon default provided by a note or deed of trust, the lender must give the borrower both notice of intent to accelerate and notice of acceleration, and in the proper sequence. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). "Both notices must be 'clear and unequivocal.'" *Id*.

The lender must give the notice of intent to accelerate first. *Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233-34 (Tex. 1982). This notice must afford the borrower an opportunity to cure the default and apprise him or her that failure to cure will result in acceleration of the note and foreclosure under the power of sale. *Id*. If the default has not been cured by the deadline established in the notice, the lender must then give notice of acceleration. *Id*. Ordinarily, a lender gives notice of acceleration by expressly declaring the entire debt due. However, a lender may give notice of acceleration by taking some other unequivocal action indicating the debt is accelerated. *Joy Corp. v. Nob Hill N. Props., Ltd.*, 543 S.W.2d 691, 694-95 (Tex.Civ.App.--Tyler 1976, no writ), *disapproved on other grounds by Wolf*, 44 S.W.3d at 569-70. So long as it is preceded by the required notice of intent to accelerate, notice of a trustee's sale constitutes

4

unequivocal action indicating the debt is accelerated. *See Meadowbrook Gardens, Ltd. v. WMFMT Real Estate Ltd. P'ship*, 980 S.W.2d 916, 919 (Tex.App.--Fort Worth 1998, pet. denied)(holding that notice of intent to accelerate coupled with notice of foreclosure sale amounted to notice of acceleration); *McLemore v. Pacific Sw. Bank, FSB*, 872 S.W.2d 286, 292-93 (Tex.App.--Texarkana 1994, writ dism'd)(holding that notice of intent to accelerate followed by notice of trustee's sale constitutes notice of acceleration); *see also Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 904 (Tex.App.--Dallas 2008, no pet.)(holding that notice of filing an expedited application for foreclosure after the requisite notice of intent to accelerate is sufficient to constitute notice of acceleration).

## Discussion

By providing Brown with the Notice of Substitute Trustee' Sale four days after providing her with the notice of intent to accelerate, Karam unequivocally indicated that the debt had been accelerated. *See Burney*, 244 S.W.3d at 904; *Meadowbrook Gardens*, 980 S.W.2d at 919; *McLemore*, 872 S.W.2d at 292-93*; Joy Corp.*, 543 S.W.2d at 694-95. Karam argues the notice of trustee's sale in this case was not an unequivocal act of acceleration because it was sent "with the July 13, 2010, letter, which made it clear that acceleration would occur only if the default was not cured as provided in the July 9, 2010, letter, which was July 19, 2010." Karam, however, cites no authority in support of his argument. Instead, he insists that this case is distinguishable from *Burney*, *McLemore*, and *Meadowbrook* because here he provided a notice of acceleration *and* a notice of trustee's sale whereas there the lenders provided a notice of trustee's sale only. We are not persuaded by Karam's argument.

5

Contrary to Karam's assertion, the July 13, 2010 letter and the enclosed Notice of Substitute Trustee's Sale did not make it clear that the debt remained contingent on the default being cured by July 19, 2010. Although Karam asserts that the letter "is a notice of acceleration that would take effect after July 19, 2010," the lexicon in the letter and notice belies his assertion.

In relevant part, the letter reads:

> This letter constitutes formal notice to you of your default . . . and formal demand to cure the default as set forth in my letter dated July 9, 2010. *If you fail to cure the default as provided in my July 9, 2010 letter, the entire unpaid balance is hereby declared to be due and payable plus all accrued unpaid interest.*

> .        .        .

> Enclosed is a copy of a Notice of Substitute Trustee's Sale *which has been posted this date for the public sale* of the said property [on August 3, 2010] . . . . [Emphasis added].

The notice of sale reads, in relevant part:

> WHEREAS, default has occurred under the terms of the Note secured by the deed of Trust, *and the indebtedness evidenced therein is now wholly due*, the Beneficiary of the Deed of Trust has requested the undersigned to sell the Property to satisfy the same.

> NOW, THEREFORE, NOTICE IS HEREBY GIVEN that on Tuesday, the 3d day of August, 2010, I will begin to sell the Property . . . . [Emphasis added].

As is evident, the italicized language in the letter and the notice of sale connotes that the note has been accelerated. The letter states that should Brown not pay the indebtedness "as provided in [the] July 9, 2010 letter," "the entire unpaid balance is hereby declared to be due and payable." As defined by Black's Law Dictionary, "hereby" means "[b]y this document; by these very words." BLACK'S LAW DICTIONARY, (Ninth Ed. 2009), p. 794. The enclosed notice of sale declares that the "indebtedness" "is now wholly due" and uses the term "whereas" in so declaring.

6

As defined by Black's Law Dictionary, "whereas" means "[g]iven the fact that; since." BLACK'S LAW DICTIONARY, p. 1733. Further, the letter states explicitly that the notice of sale had already been posted. Moreover, the requirement that the notice of acceleration be "clear and unequivocal" is for the benefit of the borrower, not the lender, because foreclosure is a harsh remedy. *See Ogden*, 640 S.W.2d at 233-34. Karam's first issue is overruled.

## *DISPUTED PAYMENTS*

In his second and fifth issues, Karam challenges the factual sufficiency of the trial court's findings of fact regarding two disputed payments. In his second issue, Karam contends the trial court's finding that Brown made a partial payment of $649.41 in mid-July 2010 is factually insufficient because the evidence was he received the payment "about mid-July" rather than in "mid-July." In his fifth issue, Karam argues the trial court's finding that Brown made a $2,954.22 partial payment in April 2010 is factually insufficient because other evidence, namely the 2010 payment report stipulated to and admitted at trial, showed that no payment was made in April 2010. We disagree.

## **Standard of Review**

Findings of fact in a bench trial have the same force and dignity as a jury's verdict, and we review them for legal and factual sufficiency by the same standards applied in reviewing evidence supporting a jury's answer. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). As the fact finder in a bench trial, the trial court is the sole judge of the credibility of witnesses. *See Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 111 (Tex.App.--Houston [1st Dist.] 2005, no pet.).

7

In reviewing the factual sufficiency of the evidence, we consider all the evidence and set aside a finding only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When a party attacks the factual sufficiency of an adverse finding on an issue on which it did not have the burden of proof at trial, he must show that there is insufficient evidence to support the adverse finding. *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex.App.--Houston [1st Dist.] 2004, no pet.).

**Discussion**

When viewed in a neutral light, the trial court's findings of fact concerning the payments of which Karam complains are not clearly wrong or manifestly unjust. With regard to the trial court's finding that Brown made a partial payment of $649.41 in mid-July 2010, it is undisputed that Cecil testified she received the July 2010 partial payment "about mid-July." It is also undisputed that Karam did not pursue the matter on cross-examination or offer any controverting evidence. Karam contends that "[Cecil's] actual testimony . . . in [sic] not precise enough for the trial court to have made [its finding], especially because the trial court left out ['about'][,] the very word that created the imprecision." Although "about" is an imprecise word, it means "near" or "close to." WEBSTER'S NEW UNIVERSAL ABRIDGED DICTIONARY 6 (2nd Ed. 2003). Cecil's uncontroverted testimony thus provided the trial court with a factually sufficient basis from which it could reasonable find that Brown made a payment in mid-July 2010.

With regard to the trial court's finding that Brown made a $2,954.22 partial payment in April 2010, it is undisputed that conflicting evidence existed on the matter. On the one hand, the report detailing Brown's 2010 payment history did not include this payment. On the other hand,

8

Cecil testified that she received this payment in March 2010 and that it should have been credited as April 2010's payment but was not and therefore was not reflected in the payment report. Karam argues certain inconsistencies in the evidence, namely that the check is dated March 12, 2009 and that the report shows no payment in April 2010, renders the evidence factually insufficient. But the trial court was in the best position to gauge the reliability of the evidence and its decision will not be overturned simply because there was conflicting evidence. All that is required is that the trial court's conclusions are supported by evidence in the record, as exists here, and are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust, which here they are not. Karam's second and fifth issues are overruled.

### REOPENING THE CASE FOR ADDITIONAL EVIDENCE

In his third issue, Karam asserts that the trial court erred in denying his motion to reopen the case to introduce evidence that the $649.41 payment was made in June 2010, not mid-July 2010 as found by the trial court. We disagree.

### Standard of Review

We review a trial court's decision to reopen a case after evidence is closed for an abuse of discretion. *See Forrest v. Hanson*, 424 S.W.2d 899, 907 (Tex. 1968); *Word of Faith World Outreach Ctr. Church, Inc. v. Oechsner*, 669 S.W.2d 364, 366 (Tex.App.--Dallas 1984, no writ). A trial court should exercise its discretion liberally in the interest of justice to permit both parties to fully develop the case. *Word of Faith*, 669 S.W.2d at 366-67. Unless the trial court has clearly abused its discretion, an appellate court should not disturb its refusal to reopen a case for the purpose of admitting additional evidence. *Id.* at 366. A trial court abuses its discretion when it

9

acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

## Applicable Law

Rule 270 of the Texas Rules of Civil Procedure provides that a trial court may permit additional evidence to be offered at any time when it clearly appears necessary to the administration of justice. TEX.R.CIV.P. 270. Rule 270 allows, but does not require, the court to permit additional evidence. *Lopez v. Lopez*, 55 S.W.3d 194, 201 (Tex.App.--Corpus Christi 2001, no pet.). In determining whether to grant a motion to reopen, the trial court considers whether: (1) the moving party showed due diligence in obtaining the evidence; (2) the proffered evidence is decisive; (3) reception of such evidence will cause undue delay; and (4) granting the motion will cause an injustice. *Id.* "Where these factors are present, it may be a trial court's duty to grant a party's motion to offer additional evidence." *Naguib v. Naguib*, 137 S.W.3d 367, 373 (Tex.App.--Dallas 2004, pet. denied). Conversely, "if all of the factors are not satisfied, a trial court's ruling on a party's motion to reopen the evidence should not be disturbed." *Id.*

## Discussion

Karam has not demonstrated that the trial court abused its discretion in denying his motion to reopen the evidence. Karam argues the trial court erred because the bank statement he sought to have admitted into evidence established a prima facie case that Brown made the $649.41 payment in June 2010. However, Karam cites no authority in support of his argument and, more significantly, fails to address *any* of the factors the trial court was required to consider in determining whether to grant his motion. For instance, Karam does not address whether he was

diligent in obtaining the bank statement he sought to introduce, nor does he argue that he was not required to show due diligence. *See Word of Faith*, 669 S.W.2d at 367. Given that the bank statement was generated from his business account, was never produced during discovery, and was offered approximately eighteen months after June 2010, it was incumbent upon Karam to prove that the statement was not in his possession or available to him until then. *See Poag v. Flories*, 317 S.W.3d 820, 828 (Tex.App.--Fort Worth 2010, pet. denied); *Moore v. Jet Stream Investments, Ltd.*, 315 S.W.3d 195, 201-02 (Tex.App.--Texarkana 2010, pet. denied); *Lopez*, 55 S.W.3d at 200-02. Because Karam has not shown that all of the factors identified above were satisfied, we cannot conclude the trial court abused its discretion in denying his motion to reopen the evidence. *See Naguib*, 137 S.W.3d at 373. Karam's third issue is overruled.

## WAIVER OF RIGHT TO ACCELERATE THE NOTE

In his fourth issue, Karam argues the trial court erred in concluding that he waived his right to accelerate the note by accepting the July 2010 payment after notifying Brown that she was in default because "[t]here is no evidence that [he accepted the payment] to cure the default." We disagree.

## Applicable Law

"Exercise of the power of acceleration is a harsh remedy which deserves close scrutiny." *McGowan v. Pasol*, 605 S.W.2d 728, 732 (Tex.Civ.App.--Corpus Christi 1980, no writ). "Loss of the right to accelerate may result from inconsistent or inequitable conduct on the part of the holder of a promissory note." *Id*. "Ordinarily, acceptance of past due installments on a note waives *only* the option to accelerate on the past defaults and does *not* waive the option to declare

11

the balance due on the note for future defaults." *Id*. [Emphasis added]. "Even when a note holder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept payments without exacting any remedies available to it upon declared maturity." *Wolf*, 44 S.W.3d at 566-67.

## Discussion

In light of evidence that Karam acted inconsistently and inequitably in accepting Brown's payments on the note, the trial court was correct in concluding that Karam waived his right to accelerate the note by accepting the July 2010 payment after notifying Brown she was in default. Brown was obligated under the note to pay monthly installments of $2,954.22 each, including interest, commencing September 7, 2007 and continuing thereafter until paid in full. Through December 2009, Brown made the monthly payments without incident. That changed in 2010. Although Brown made regular monthly payments in February and April 2010 and a bigger payment of $3,906.25 in January 2010, she did not do so in March, May, June, and July 2010. In three of these four months, Brown made partial payments of $1000, $2000, and $649.41. June 2010 was the only month in which Brown made no payment of any kind.

In accepting Brown's payments on the note, Karam acted inconsistently. Karam accepted partial payments in March 2010 and May 2010 without making demand for payment or accelerating the note, waiting instead until July 9, 2010—two days after the July 2010 payment was due—to demand payment. Yet, even after demanding payment and accelerating the note, Karam accepted a partial payment on the note in mid-July 2010 and proceeded with foreclosure.

12

Karam also acted inequitably in accepting Brown's payments on the note. One of the documents stipulated to by the parties and admitted into evidence was a letter Brown wrote Karam ten days after the foreclosure. In relevant part, the letter states:

> I have been paying you very promptly and early, many $3000/month cashier's checks monthly for 3 years. But SEVERAL TIMES IN RECENT MONTHS, suddenly YOU ALL REFUSED TO RECEIVE my payment . . . . Then you said that I am late 1 month, 1 ½ or 2 months! Cecelia kept sending me away, insisting that I go and bring only 1 cashiers check only for the payment. You all kept making many self arbitrary rules as you go along! She kept my $3000 check and $1000 cashier check, would not credit them as my payment for the mortgage! She said she is just 'holding them'! Then next, she refused to accept another new $3000 cashier's check I have brought to pay another month's rent. Karam refused to give me receipts all 3 years! You intentionally set it up to confuse the whole payment issue to cause me to be late and to possess my property!
>
> With your continued refusal to accept my $3000, $2000 or $1000 cashiers checks lately, sending me away, I knew you all were setting up to make me starting to be late in payment. Then she'd charge me $250 late fee to add to it. Then she said it's not the complete payment because I had forgotten to add in the late fee and she refused to take my payment so that I am additionally more months late in payment!

Karam did not dispute the veracity of these statements at trial, nor does he now on appeal. Karam's fourth issue is overruled.

## BROWN'S CROSS-ISSUES ON APPEAL

In three-cross issues, Brown contends the trial court erred in failing to award her appellate attorney's fees, in miscalculating the amount of her damages, and in denying her request to amend her pleadings to conform to the evidence at trial and the trial court's findings of fact.

### DENIAL OF APPELLATE ATTORNEY'S FEES

In her first issue, Brown argues the trial court erred in not awarding her appellate attorney's fees in the amount stipulated to by the parties. We agree.

13

## Standard of Review

We will not disturb a trial court's award of attorney's fees absent an abuse of discretion. *Hall v. Hubco, Inc.*, 292 S.W.3d 22, 33 (Tex.App.--Houston [14th Dist.] 2006, pet. denied). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Ford Motor Co.*, 363 S.W.3d at 578.

## Applicable Law

"[I]f an award of trial attorney's fees is mandatory under section 38.001, an award of appellate attorney's fees is likewise mandatory." *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 199 (Tex.App.--Fort Worth 2012, no pet.). A stipulation constitutes some evidence of the reasonableness of requested attorney's fees, and when a case is tried on agreed stipulated facts under Rule 263 of the Texas Rules of Civil Procedure, the agreed stipulations are binding on the trial court and reviewing court. *Hall*, 292 S.W.3d at 33; *Paciwest, Inc. v. Warner Alan Properties, LLC*, No. 02-10-00378-CV, 2012 WL 3499603, *12 n.38 (Tex.App.--Fort Worth Aug. 16, 2012, pet. denied)(mem. op. on reh'g).

## Discussion

The trial court abused its discretion in failing to award Brown the appellate attorney's fees stipulated to by the parties. The trial court awarded Brown $22,475 as reasonable and necessary attorney's fees through the entry of judgment, concluding that she was entitled to these fees "pursuant to Section 37.009 and/or Section 38.001 of the Texas Civil Practice & Remedies Code." Because the trial court awarded Brown attorney's fees pursuant to Section 38.001, it was also required to award her appellate attorney's fees. *See Manuel*, 362 S.W.3d at 199. As stipulated to

14

by the parties, Brown's appellate attorney's fees were $35,000.  Except for brief testimony offered by Cecil Karam, this case was tried on agreed stipulated facts under Rule 263.  Accordingly, the agreed stipulation concerning appellate fees is binding and, since uncontested, conclusive.  *See Paciwest, Inc.*, 2012 WL 3499603, at \*12 n.38; *Hall*, 292 S.W.3d at 33.

Relying on *Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200 (Tex.App.--Houston [14th Dist.] 2001, pet. denied), Karam argues the trial court did not have to award attorney's fees for appeal.   Karam's reliance on *Anderson, Greenwood* is misplaced.   There, the court of appeals held that a trial court had discretion to award no appellate fees.   *Id*. at 221.   It so held, however, in a case where the fee claimant lost on its contract claim and therefore had no basis for recovering any attorney's fees—appellate or otherwise.   Here, on the other hand, Brown was successful in recovering on her contract claim and thus had a basis to recover attorney's fees pursuant to Section 38.001.   Brown's first cross-issue is sustained.

## MISCALCULATION OF DAMAGES

In her second cross-issue, Brown maintains the trial court arithmetically miscalculated her damages by failing to include the $2,954.22 April 2010 payment found to have been made.   We agree.

The trial court found that Brown's damages were $111,636.51.   It arrived at this figure by subtracting $288,363.49—the outstanding balance on the date of the foreclosure—from $400,000—the market value of the property on the date of foreclosure.   The trial court found that $273,408.59 of the $288,363.49 outstanding balance was principal.   The amount of outstanding principal found by the trial court to be due corresponded exactly to the amount of "unpaid

principal" identified in the July 13, 2010 letter written by Karam's counsel and provided to Brown. That sum, however, failed to account for the $2,954.22 April 2010 payment the trial court found Brown made but did not receive credit for, as testified to by Cecil Karam. Accordingly, the trial court failed to subtract this amount from the outstanding balance. Thus, the correct figure for the outstanding balance is $285,409.27—the difference between $288,363.49 and $2,954.22—and $114,590.73 for the total amount of damages—the difference between $400,000 and $285,409.27. Brown's second cross-issue is sustained.

## DENIAL OF MOTION FOR LEAVE TO FILE TRIAL AMENDMENT

In her third and final cross-issue, Brown contends the trial court erred by denying her request to amend her pleadings to "reflect that [she] plead the acceptance of the July 2010 payment as a second basis for her wrongful foreclosure action . . . ." We agree.

### Standard of Review

We review the trial court's decision denying Brown's motion for leave to file a trial amendment for an abuse of discretion. *See State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994)("If the trial amendment is not mandatory, then the decision to permit or deny the amendment rests within the sound discretion of the trial court."). A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles. *Ford Motor Co.*, 363 S.W.3d at 578.

### Applicable Law

A trial court must grant leave to amend "unless there is a showing that such filing will operate as a surprise to the opposite party." TEX.R.CIV.P. 63. The burden to show surprise or

16

prejudice is on the party resisting the amendment. *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990). This required showing may be made by presenting evidence of surprise or prejudice or based on the trial court's conclusion that the amendment on its face is calculated to surprise or prejudice. *See id*. at 940; *Hardin v. Hardin*, 597 S.W.2d 347, 350-51 (Tex. 1980). An amendment adding a new cause of action or defense operates as a surprise and is prejudicial on its face if it: (1) reshapes the nature of the case; (2) could not have been anticipated; and (3) prejudices a party's presentation of the case. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 186 (Tex.App.--Houston [14th Dist .] 2002, no pet.).

### Discussion

The trial court abused its discretion in denying Brown's request to amend the pleadings. It is undisputed that Brown sought to plead a second basis for her wrongful foreclosure action. Because Brown's trial amendment added a new cause action, Karam would have shown surprise or prejudice if he could have presented evidence that the amendment reshaped the nature of the case, could not have been anticipated, and prejudiced his presentation of the case. *See Greenhalgh*, 787 S.W.2d at 939-40; *Deutsch*, 97 S.W.3d at 186. Karam, however, presented no such evidence, and none exists in the record.

Brown learned that Karam received the $649.41 payment in mid-July 2010 when she questioned Cecil. The trial court found Karam's acceptance of this payment obligated him to give new notices to Brown and concluded Karam's failure to give them provided it with an additional basis for concluding that the foreclosure was wrongful. Nine days after the trial court issued its findings and conclusion, Brown moved for leave to file a trial amendment to include the trial

17

court's finding as an additional basis for recovery. In his response to Brown's motion, Karam did not allege surprise or prejudice but rather that the July payment was disclosed. Indeed, even now on appeal, Karam does not argue that he was surprised or prejudiced. Rather, he contends that the trial court did not abuse its discretion in denying Brown's motion solely because the pleading is prejudicial on its face. But under these circumstances we cannot conclude that surprise or prejudice is apparent on the face of the pleadings, given that Karam could have anticipated that Brown would seek to amend her pleadings to include a second basis for recovery identified by the trial court in its findings and conclusions. *See Hardin*, 597 S.W.2d at 350 (concluding that amendment was prejudicial on its face where "[the] amendments could not have been anticipated by the plaintiff, and had they been permitted, they would have prejudiced the plaintiff's presentation of the case and resulted in unnecessary delay"). Brown's third and final cross-issue is sustained.

## CONCLUSION

Having sustained all of Brown's cross-issues, we reverse the trial judgment with respect to them and remand those portions of the cause to the trial court for further proceedings consistent with this opinion. We affirm the remainder of the trial court's judgment.

July 24, 2013

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, J., and Larsen, Senior Judge
Larsen, Senior Judge (Sitting by Assignment)

18