COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


| | | |
|---|---|---|
| ANDERSON REMODELING & CONSTRUCTION, LLC | § | No. 08-19-00292-CV |
| | § | Appeal from the |
| Appellant, | § | |
| | | 109th Judicial District Court |
| v. | § | |
| | | of Andrews County, Texas |
| PATRICK SMITH and ANGELA RAY, | § | |
| | | (TC#20,906) |
| Appellees. | § | |

## MEMORANDUM OPINION

Following a bench trial, the trial court entered a take-nothing judgment in favor of Appellees, Patrick Smith and Angela Ray (the "Homeowners"), on Appellee Anderson Remodeling & Construction, LLC's ("Anderson Remodeling") claim for breach of an oral construction contract. On appeal, Anderson Remodeling contends that in rendering its judgment, the trial court erroneously relied on the Homeowners' unpled affirmative defense based on Texas homestead law. Anderson Remodeling also contends that the trial court erred by denying its oral motion for a trial amendment in which it sought to add claims of quantum meruit and unjust

enrichment to its breach of contract claim. Because we disagree with both arguments, we affirm the trial court's judgment.

## I. FACTUAL BACKGROUND

The Homeowners originally entered into a written contract in which Anderson Remodeling agreed to construct what was described as a "shop" for the sum of $134,400.00. The original contract listed 12 items within Anderson Remodeling's agreed "scope of work," all of which appeared to relate to the external construction of the building itself. Several months later, the parties entered into an amended contract in which the Homeowners agreed to pay Anderson Remodeling $160,000.00 for the same 12 items listed in the original contract, together with two new items: (1) a 1,742 linear foot wood fence to be constructed around the property, and (2) the construction of a 20-foot "roll gate." The construction was completed in November of 2015, and the parties agree that the Homeowners paid the $160,000.00 owed under the amended written contract.

Anderson Remodeling subsequently billed the Homeowners for an additional $80,842.00, as reflected in two separate invoices, which the Homeowners refused to pay.[1] In the first invoice Anderson Remodeling sought payment of $21,472.00 for the "Balance on Building wood fence around property 1,742 lf." In the second invoice Anderson Remodeling sought payment of $59,370.00, for the construction of a deck, as well as for various improvements it allegedly made to the interior of the building, which included electrical and plumbing work.

---

[1] At trial, Angela Ray testified that she did not receive the invoices until almost a year after the construction was completed. Anderson Remodeling did not present any evidence as to when the invoices were sent, but they were dated March 30, 2015, and December 2, 2015.

2

## II.  PROCEDURAL BACKGROUND

After the Homeowners refused to pay either of the invoices, Anderson Remodeling filed suit alleging that the Homeowners were in breach of contract.   The petition only referenced the two written contracts and claimed that the Homeowners were "in breach of their contract," and owed a balance of $80,842.00.   The Homeowners filed a general denial, together with a counterclaim seeking an unspecified amount of damages, alleging that Anderson Remodeling had not fulfilled its obligations under the amended contract.   The Homeowners later abandoned their counterclaim, and the only pleaded theory litigated at trial was Anderson Remodeling's breach of contract claim.

### A.  The Trial Testimony

At trial, Robert Anderson, owner of Anderson Remodeling, acknowledged that the Homeowners had paid all of the amounts due under the amended written contract.   However, he testified that he and the Homeowners had entered into oral change orders while construction was ongoing, authorizing him to perform additional work on the property.   That work included the construction of an upgraded metal fence, a double roll gate instead of a single one, and various interior improvements that were not listed in either of the original written contracts.[2]   He claimed the change orders totaled $80,842.00.

On the other hand, Ray testified that she and Smith did not enter into any agreements with Anderson other than the original and amended written contract, and that they paid the amended contract in full.   She recalled receiving the two invoices in question requesting additional

---

[2] The invoices sent to the Homeowners, however, sought payment of $21,472.00 for the construction of a wood fence, and no additional charge for the roll gate.

3

payments almost a year after the construction was completed. Ray explained that she did not pay the invoices, as she believed the parties' amended written contract covered all of the work that Anderson Remodeling performed on the property, including the construction of the fence and the interior improvements, expressing her expectation that the amended contract required Anderson Remodeling to ensure that the building was "turnkey" and ready for habitation when it was finished.[3]

Although she acknowledged that the building was described as a "shop" in the parties' contracts, she testified that she considered it to be a "barndominium," which she explained was a "new concept" in home building in the area. As such, she testified that the building was her "homestead," and her attorney argued that in light of the homestead exemption, Anderson Remodeling could not obtain a judgment against the Homeowners in the absence of a signed contract. In its post-trial pleadings, Anderson Remodeling objected to Ray's purported homestead defense, asserting that it was not properly pled or proven at trial.

## B. The Request for a Trial Amendment

Following closing arguments to the trial court, Anderson Remodeling acknowledged that it pled only a claim for breach of contract in its original petition, but it asked for a trial amendment to add two new causes of action: quantum meruit and unjust enrichment. The Homeowners' attorney objected to the request, contending that it was not pled and was made at the "last minute."

---

[3] The parties' original contract contains a penciled notation, showing an additional amount owed of $44,720, for the construction of the fence, for a total of $181,472.00. Ray explained at trial, however, that when the parties initially discussed amending the original contract, Anderson wanted to charge her $181,472.00 for the additional improvements, but he later agreed to the final price of $160,000.

The trial court denied the request, finding it to be untimely. Instead, the trial court stated its intention to rule solely on the basis of Anderson Remodeling's claim for breach of contract.

## C. The Trial Court's Judgment

The trial court later entered take-nothing judgments on both Anderson Remodeling's breach of contract claim and the Homeowner's counterclaim. Although both parties filed requests for findings of fact and conclusions of law, none were entered. Neither party filed a notice of past due findings, nor has either complained on appeal of the trial court's failure to make findings.[4]

Anderson Remodeling filed a motion for new trial, contending that the trial court erred in denying its trial amendment, and the Homeowners should not have been permitted to raise the "affirmative defense" of homestead, as they did not properly plead or prove that the building was in fact homestead property. After the motion for new trial was denied by operation of law, Anderson Remodeling appealed raising these same two issues for our review.

## III. THE HOMESTEAD DEFENSE

In Issue One, Anderson Remodeling contends that the Homeowners improperly raised the "affirmative defense of homestead" during trial, despite not having pled the defense in their answer. Anderson Remodeling concludes that the trial court necessarily and erroneously relied on the homestead defense in rendering its take-nothing judgment. The Homeowners counter that there is nothing in the record to suggest that the trial court relied on the homestead defense in rendering its judgment, noting that its final judgment only stated that it found in favor of the

---

[4] *See* TEX.R.CIV.P. 297 (setting out requirements for notice of past due findings); *see also Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 137 (Tex. 2017) ("Without [the] timely reminder [that rule 297 requires], [the requesting party] waived its complaint of the failure on appeal.").

Homeowners on Anderson Remodeling's breach-of-contract claim. We agree with the Homeowners' assertion that the record is devoid of any indication that the trial court relied on the Homeowners' attempt to assert a homestead defense.

### A. Standard of Review

This case comes before us without the benefit of findings of fact and conclusions of law. In the absence of findings and conclusions, the judgment of the trial court must be affirmed if it can be upheld on any available legal theory that finds support in the evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987); *Rivas v. Rivas*, 452 S.W.3d 49, 56 (Tex.App.--El Paso 2014, no pet.). The trial court's judgment implies all findings of fact necessary to support it. *Seneca Ins. Co., Inc. v. Ross*, 507 S.W.3d 798, 802-03 (Tex.App.--El Paso 2015, no pet.). But with the benefit of a reporter's record, these implied findings are not conclusive, and may be challenged for the sufficiency of the evidence to support them. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

### B. Application

Anderson Remodeling does not identify and attack the several implied findings that might support the trial court's judgment. For instance, Anderson testified that he had a verbal agreement for extra work with the Homeowners. Ray denied this was the case, as she believed the parties' amended written contract covered all the work that Anderson Remodeling performed on the property, including the construction of the fence and the interior improvements.[5] The judgment

---

[5] And even had Anderson Remodeling challenged the implied finding that there was no agreement for additional work, it would face the hurdle that the trial court as the fact finder was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819-20 (Tex. 2005); *Wheeling v. Wheeling*, 546 S.W.3d 216, 223 (Tex.App.--El Paso 2017, no pet.).

can be upheld under the rationale that Anderson Remodeling failed to carry its burden of proof that the work it billed for was not already included in the contract price that the Homeowner's had already paid for. In other words, its assertion that the trial court necessarily relied on an affirmative defense is unsupported on this record. As such, the issue of the homestead defense is a red herring.

That conclusion is further bolstered here because while a homestead defense might have protected the subject property, it would not have prevented a judgment against the Homeowners. Homestead protection finds its roots in the Texas Constitution, which provides that the "homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts," except in certain circumstances enumerated therein. TEX.CONST. ART. XVI, § 50. Relevant to our analysis, one of the enumerated exceptions is for "work and material used in constructing new improvements thereon, if contracted for in writing, or work and material used to repair or renovate existing improvements thereon . . . ."[6] TEX.CONST. ART. XVI, § 50. Thus, a contractor who makes improvements on a homestead, but who is not paid by the homeowners, may only file a lien or force a sale for the payment of the debt if the contractor has a written contract with the homeowner. *See* TEX.PROP.CODE ANN. § 41.001(a)(b)(3) (providing that a homestead is "exempt from seizure for the claims of creditors except for encumbrances properly fixed on homestead property"); *see also Laster v. First Huntsville Properties Co.*, 826 S.W.2d 125, 129-30 (Tex. 1991); *Dominguez v. Castaneda*, 163 S.W.3d 318, 329 (Tex.App.-- El Paso 2005, pet. denied).

---

[6] The Constitution also provides that any such writing must meet certain requirements not relevant to our discussion. TEX.CONST. ART. XVI, § 50(5)(A-D).

However, the homestead laws only protect the homestead *property* itself from liens and forced sales. They do not affect a contractor's right to obtain a personal money judgment against a homeowner who has breached a contract, which in turn can be collected in a variety of other ways, aside from the filing of a lien or the forced sale of the property. *See, e.g.*, *Lott v. Penny*, No. 05-99-00157-CV, 1999 WL 1117098, at *4 (Tex.App.--Dallas Dec. 8, 1999, no pet.) (not designated for publication) (recognizing that the homestead protections may prevent a recovery "*against* a homestead" where there is no written contract, but do not prevent the entry of a money judgment against the homeowners on a theory of quantum meruit). In the present case, Anderson Remodeling was not attempting to either place a lien on the Homeowners' property or to force a sale of the property; instead, it was simply attempting to obtain a money judgment against the Homeowners based on their alleged breach of the parties' oral agreement. And because the homestead defense has no relevance to the question of whether Anderson Remodeling was entitled to a money judgment against the Homeowners, the Homeowners' attempt to raise a homestead defense could not have factored into the trial court's judgment. We therefore reject Anderson Remodeling's contention that the trial court necessarily relied on the homestead defense in rendering its judgment.

Anderson Remodeling's Issue One is overruled.

## IV. THE DENIAL OF THE TRIAL AMENDMENT

In Issue Two, Anderson Remodeling contends that the trial court erred when it denied its trial amendment to add causes of action for quantum meruit and unjust enrichment, claiming that the Homeowners provided no evidence that the amendment would have prejudiced their case, and

8

that the amendment was necessary due to Ray's surprise testimony regarding her claim of homestead.   We disagree with both points.

### A.   Standard of Review

We review a trial court's decision denying a motion for leave to file a trial amendment for an abuse of discretion.   *See Karam v. Brown*, 407 S.W.3d 464, 476 (Tex.App.--El Paso 2013, no pet.), *citing State Bar of Tex. v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994) ("If the trial amendment is not mandatory, then the decision to permit or deny the amendment rests within the sound discretion of the trial court.").   A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without regard to guiding legal principles.   *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 578 (Tex. 2012).

### B.   Controlling Law

Rule 66 of the Texas Rules of Civil Procedure provides that the trial court shall "freely" grant a request for a trial amendment "when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits." TEX.R.CIV.P. 66.   Similarly, Rule 63 provides that a trial court shall grant an amendment made within seven days of trial or thereafter "unless there is a showing that such filing will operate as a surprise to the opposite party."   TEX.R.CIV.P. 63.   The burden to show surprise or prejudice is on the party resisting the amendment.   *See Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *Karam*, 407 S.W.3d at 476.

9

Anderson Remodeling focuses its argument on the failure of the Homeowners to present any evidence of either prejudice or surprise.[7]   A party opposing a trial amendment, however, is not always required to present such evidence.   When the trial amendment seeks to add a new cause of action, in certain circumstances the attempt to add a new cause of action can be considered "prejudicial on its face."   *See Karam*, 407 S.W.3d at 476, *citing Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 186 (Tex.App.--Houston [14th Dist.] 2002, no pet.); *see also Kilpatrick*, 874 S.W.2d at 658 (recognizing that an amendment that asserts a new cause of action or defense may be considered prejudicial on its face).   In particular, an amendment adding a new cause of action is considered prejudicial on its face if it:   "(1) reshapes the nature of the case; (2) could not have been anticipated; and (3) prejudices a party's presentation of the case."   *Karam*, 407 S.W.3d at 476, *citing Deutsch*, 97 S.W.3d at 186.

**C.  Application**

*1.  The trial amendment was prejudicial on its face*

Applying the above test, the proposed trial amendment was prejudicial on its face.   First, the addition of the proposed claims for quantum meruit and unjust enrichment would have substantially reshaped the nature of the trial.   Anderson Remodeling's original petition sounded solely in breach of contract.   Claims for quantum meruit and unjust enrichment are independent claims for relief, which are distinct from breach of contract; in effect, these claims allow a plaintiff

---

[7] The record shows, however, that the trial court did not give the Homeowners the opportunity to present such evidence, or make any arguments regarding whether they were surprised or prejudiced by the trial amendment, as the trial court summarily denied Anderson Remodeling's request for the trial amendment without comment immediately after it was made.   *See Wendell v. Cent. Power & Light Co.*, 677 S.W.2d 610, 618 (Tex.App.--Corpus Christi 1984, writ ref'd n.r.e.) (finding it irrelevant that the opposing party did not object to the filing of a trial amendment, where the trial court denied the trial amendment without giving party's attorney the opportunity to object).

to recover for services rendered or materials furnished when there is no express contract covering the services or materials in question, and the defendant would be unjustly enriched by accepting or receiving the services or materials without payment.[8] *See Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732-33 (Tex. 2018) (recognizing that a claim for quantum meruit is an equitable remedy, distinct from a breach of contract claim, and is based upon a promise that is "implied by law to pay for beneficial services rendered and knowingly accepted," to prevent a party from being unjustly enriched by services); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000) (a claim for unjust enrichment arises when there is no express contract between the parties, and is based on a theory of "quasi-contract" to prevent a party from being unjustly enriched by the other's actions).

Thus, while a claim for breach of contract requires evidence of an express contract that was breached, claims for quantum meruit and unjust enrichment require the opposite, i.e., evidence that there was no express contract governing the services rendered, making the claims inconsistent with each other. *See Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964) (recognizing that recovery on an express contract and on quantum meruit are "inconsistent."); *Houle v. Casillas*, 594 S.W.3d 524, 554 (Tex.App.--El Paso 2019, no pet.) ("Recovery under a theory of unjust enrichment is based on quasi-contract, and therefore, when a valid, express contract covers the subject matter of the parties' dispute, there can generally be no recovery under this theory, as

---

[8] The elements of a claim for quantum meruit are as follows: "1) valuable services were rendered or materials furnished; 2) for the person sought to be charged; 3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged." *Vortt Expl. Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990). Similarly, a plaintiff may recover under a theory of unjust enrichment when the defendant has wrongfully secured a benefit, or has passively received a benefit, which it would be unconscionable to retain. *Houle v. Casillas*, 594 S.W.3d 524, 554 (Tex.App.--El Paso 2019, no pet.).

11

allowing such recovery would be inconsistent with the parties' express agreement."); *see also Chico Auto Parts & Serv., Inc. v. Crockett*, 512 S.W.3d 560, 573-74 (Tex.App.--El Paso 2017, pet. denied) (recognizing that "[a] party generally cannot recover under *quantum meruit* when there is a valid contract covering the services or materials furnished."). Accordingly, a trial amendment adding these two new claims for relief would have shifted the focus of the trial from the issue of whether an express contract existed, as Anderson Remodeling claimed, to the issue of whether Anderson Remodeling could recover under these entirely new and inconsistent theories of recovery.

Second, we find nothing in the record to suggest that the Homeowners could have anticipated prior to trial that Anderson Remodeling intended to raise these new claims for relief. Anderson Remodeling's petition only alleged that the Homeowners had breached an express contract, and the record does not contain any discovery responses or communications between the parties that would have alerted the Homeowners that Anderson Remodeling intended to deviate from this claim or that it otherwise intended to proceed at trial on a different theory of recovery.

Third, we conclude that the Homeowners would have been prejudiced in their ability to respond to these two new claims if the trial court had granted the trial amendment. To establish these new claims, Anderson Remodeling would have been required to present evidence that it bestowed a benefit upon the Homeowners that was outside the scope of the parties' contract, and that the Homeowners would be unjustly enriched if allowed to retain the benefit without payment. In turn, the Homeowners would have been entitled to present evidence that they did not knowingly accept any benefits outside the scope of the contract, or alternatively, they could have disputed the value of any such benefits. But without notice that Anderson Remodeling intended to raise claims

12

for unjust enrichment or quantum meruit, it would have been a mere fortuity for the Homeowners to have addressed these issues. Moreover, the Homeowners may have been less inclined to abandon their counterclaim for damages based on Anderson Remodeling's alleged inadequate work if quantum meruit and unjust enrichment were to be litigated. The counterclaim potentially rebutted elements of the new causes of action.

The timing of the request for the trial amendment was also prejudicial to the Homeowners, as the request came after the close of evidence, and after closing arguments were already made. And although Rule 66 allows a trial court to postpone a trial to allow the party opposing a trial amendment to "meet such evidence," neither party requested any postponement of the trial, leaving the Homeowners with no opportunity to present evidence to rebut any claim of unjust enrichment or quantum meruit. TEX.R.CIV.P. 66. Accordingly, we conclude that Anderson Remodeling's trial amendment which sought to add two new claims for relief was prejudicial on its face.

### 2. *The homestead claim did not justify the amendment*

Finally, Anderson Remodeling contends that the trial court erred by denying the trial amendment, claiming that the amendment was necessary to allow it to respond to Ray's "surprise" testimony that she considered the building to be her homestead. Anderson Remodeling, however, does not explain how Ray's testimony necessitated the need to raise a claim for either quantum meruit or unjust enrichment, nor is there a connection between the two. As explained above, Ray's attempt to raise a homestead defense was irrelevant to Anderson Remodeling's quest to obtain a money judgment against the Homeowners, regardless of what theory of relief it pursued against them. Therefore, even assuming that Anderson Remodeling was surprised by the

13

Homeowners' attempts to raise the homestead defense at trial, it would be irrelevant to raising new theories of relief.

Moreover, there is nothing in the record to suggest that Anderson Remodeling could not have raised the alternative theories of unjust enrichment or quantum meruit prior to trial. As the Homeowners point out, a party is permitted to plead claims of breach-of-contract and claims of unjust enrichment or quantum meruit in the alternative. *See generally In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005) (recognizing that although the claims are inconsistent, a party to a contract may "seek alternative relief under both contract and quasi-contract theories."); *Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex.App.--Corpus Christi 1980, no pet.) ("there certainly is nothing to prevent plaintiff from pleading alternative theories of express contract and quantum meruit."). And, given the fact that the Homeowners expressly denied breaching their contract in their answer to Anderson Remodeling's petition, the trial court could have found that Anderson Remodeling knew, or should have known, of the need to raise these alternative claims for relief prior to trial, and, as explained above, could have denied the trial amendment on that basis as well. *See Geis v. Colina Del Rio, LP*, 362 S.W.3d 100, 116 (Tex.App.--San Antonio 2011, pet. denied) (recognizing that a trial court has the discretion to deny a trial amendment adding a new cause of action if the opposing party objects and "it appears that the new matter was known to the party seeking to file the amendment, or by reasonable diligence it could have been known by the party.").

Accordingly, we conclude that the trial court did not abuse its discretion in denying Anderson Remodeling's request for a trial amendment. Anderson Remodeling's Issue Two is overruled.

## IV. CONCLUSION

The trial court's judgment is affirmed.

JEFF ALLEY, Justice

January 29, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.